LINCOLN GAS & ELECTRIC LIGHT COMPANY V. WALTER E. THOMAS.

FILED JUNE 22, 1905.   No. 13,828.

Evidence examined, and *held* not sufficient to sustain the judgment.

ERROR to the district court for Lancaster county: LIN-
COLN FROST, JUDGE. *Reversed.*

*I. R. Andrews, H. F. Rose* and *Edgar M. Morsman,* for
plaintiff in error.

*T. J. Doyle, contra.*

OLDHAM, C.

This is an action for damages sustained by the plaintiff
in the court below while in the employment of the defend-
ant as a lineman. There was a trial to a jury in the dis-
trict court, verdict for the plaintiff, judgment on the ver-
dict, and to reverse this judgment defendant brings error
to this court.

At the outset of the opinion it is well to say that a care-
ful examination of the proceedings in the court below
reveals no reversible error in the conduct of the case,
either in the admission and exclusion of evidence, or in the
instructions given, if the evidence introduced by the plain-
tiff, when liberally construed and given the benefit of
every reasonable conclusion which logically flows from
the facts proved, can be said to be sufficient to show any
actionable negligence on defendant's part, on which the
proximate cause of the injury can be predicated.

The record shows that, at the time of the injury, plain-
tiff was a lineman engaged in putting a cross-arm on the
top of one of defendant's electric light poles, and in string-
ing and adjusting wires on this cross-arm. For the pur-
pose of climbing and working on defendant's poles, a line-
man is provided with a pair of metallic spurs, or climbers,

fastened to the feet, and a strong leathern belt, which is buckled around his waist. On each side of this belt is a ring, into which a second or "safety" belt is fastened by means of metallic snaps when the lineman is working on the pole. This safety belt extends around the pole to prevent the lineman from falling backward or forward while at work The cross-arms used on the poles are about 32 inches long, and are fastened to the pole by an iron bolt driven into the pole. These cross-arms are further supported by iron stays on each end of the arm. These stays, or supports, are fastened to the cross-arm about two inches from the end by bolts which are driven through the arm and secured on the inside of the arm by a nut or tap. The other end of the iron stay is bolted by the lineman into the pole. The iron stays are generally bolted on the ends of the cross-arms in defendant's shop before they are delivered to the linemen for use. On the pole where the injury occurred there were two main cross-arms. The upper one, which extended north and south, was the one on which plaintiff was stringing wires when the accident happened. While plaintiff was working on this cross-arm, another lineman in defendant's employ had fastened a lower cross-arm on the pole, extending east and west about a foot below the upper arm, and standing at right angles to it. After this second cross-arm was fastened to the pole, plaintiff, while working on the upper arm, brought his left side in contact with and against the inside of the lower cross-arm. While thus engaged, as his evidence tends to show, the bolt which protruded through the stay of the cross-arm came in contact with the spring of the snap which fastened his safety belt to the ring in his body belt, and loosened it from the body belt; and this caused the plaintiff to fall to the ground and sustain a serious and painful injury. The evidence shows that it was the custom of the defendant company to fasten the stays on these cross-arms with bolts four inches in length; that the width of the cross-arm is about three and one-quarter inches, so that when they were bolted with four-inch bolts the thread

end of the bolt, instead of standing flush with the tap which secured it on the inner side of the arm, projects from one-quarter to one-half an inch beyond the tap. The evidence shows that the circumference of the ring in which the safety belt was snapped was about one-eighth of an inch thick. Now, the negligence declared on is that defendant had used a bolt four and one-half inches in length to fasten the stays on this lower cross-arm, and that by reason of this negligent act the end of the bolt projected three-quarters of an inch beyond the tap on the inside of the arm, and that this extra half-inch projection of the bolt was the cause of the injury.

Now, conceding everything that the plaintiff's testimony tends to establish as having been proved, it may be summarized as follows: It is shown that plaintiff received serious injury while in the line of his duty in the defendant's employ; that the injury was not occasioned by any fault on plaintiff's part; that the proximate cause of the injury was the unfastening of the safety belt from the ring in the main belt, and that this was caused by the spring of the snap coming in contact with the projecting end of the bolt in the cross-arm; and that this bolt projected about half an inch farther than bolts ordinarily used in this work would project. What further deduction can be made from these established facts which tends to show actionable negligence on defendant's part in the use of these bolts?

It is suggested by counsel for plaintiff below that the record show that the jury, by consent of counsel, were permitted to go and view the premises, and from this view of the premises they may have gained information necessarily not imparted to this court in the bill of exceptions. In support of this contention we are cited to our former holdings in *Chicago, R. I. & P. R. Co. v. Farwell*, 59 Neb. 544, and *Omaha & R. V. R. Co. v. Walker*, 17 Neb. 435. In each of the cases cited the question involved was as to the value of lands taken under condemnation proceedings by the railroad. In cases of this character it is manifest

that a view of the premises would of itself constitute evidence not imparted by the record. But, in the case at bar we cannot see what advantage a view of the premises could be in determining the question as to whether an extra projection of half an inch of the bolt through the cross-arm on the pole was the proximate cause of the injury; or, whether the use of a four and one-half-inch bolt, instead of a four-inch one, was such an act as would suggest to a reasonable mind the probability of such an accident as befell the plaintiff. On first principles negligence has been defined as "a want of that care which a man of common prudence and of common sense ordinarily exercises in like employment." To constitute it, there must be "a disregard of some duty or rule of conduct prescribed beforehand or arising so manifestly from the facts as to leave no doubt of its existence." Wharton, Negligence, sec. 3; Deering, Negligence, sec. 3. It is of the essence of actionable negligence that the party charged should have knowledge that the act complained of was such an act of omission or commission as might, within the domain of probability, cause some such an injury as that complained of. After much hesitation, we are forced to the conclusion that there is nothing in the record from which we can reasonably impute knowledge to the defendant, either of the probability of the peculiar and extraordinary accident that happened to plaintiff, or that the ordinary hazard of a lineman at work on its poles would be in any manner enhanced by the use of these bolts in its cross-arms.

We therefore conclude that the evidence is not sufficient to sustain the judgment, and we recommend that the judgment of the district court be reversed and the cause remanded.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the above opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.