## BURTON v. GREIG.

## THE VILDFUGL.

(Circuit Court of Appeals, Fifth Circuit. January 28, 1921.)

No. 3571.

1. **Seamen ⬯29 (5)—Evidence held not to show owner's negligence in care of steam pipe which burst.**

On libel to recover damages for the death of a seaman caused by a bursting pipe, evidence that the pipes had been thoroughly tested a year before, and the vessel inspected a month before, and that after the explosion no flaw could be detected in the pipe, with expert testimony that sound pipes might be broken by suddenly turning steam into a pipe containing water, *held* not to show that the shipowner was chargeable with any negligence with reference to the pipe.

2. **Seamen ⬯29 (2)—Owner does not insure safety of seamen.**

The American rule allowing indemnity for the death of a seaman resulting from unseaworthiness of the vessel does not make the owner of the vessel an insurer of all the appliances on the vessel, so that there can be no recovery for the death of a seaman caused by a bursting steam pipe, where there was no evidence to establish negligence of the vessel owner with reference to that pipe.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Erwin, Judge.

Libel in admiralty by Hilda Burton, widow of Abraham William Burton, individually and on behalf of her minor children, against Joachim Greig, as owner of the steamship Vildfugl. From a decree dismissing the libel (265 Fed. 418), libelant appeals. Affirmed.

Rene A. Viosca, of New Orleans, La. (M. C. Scharff, of New Orleans, La., on the brief), for appellant.

Esmond Phelps, of New Orleans, La., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was a libel in admiralty by the appellant, the widow of Abraham William Burton, suing in her own behalf and in behalf of her minor children, against the appellee, owner of the steamship Vildfugl, to recover damages resulting from the death of the deceased on September 18, 1919, while employed as a fireman on said vessel, caused by the blowing out of a steam pipe connected with the engine boiler, while the vessel was in the Mississippi river at the port of New Orleans.

[1] The evidence was not such as to call for a finding that the shipowner was chargeable with any negligence with reference to the pipe which burst. Evidence showed that such a general survey and overhauling of the vessel as is customarily made every four years was made in August, 1918, by Lloyds' surveyors at New Orleans, and that at that time very expensive repairs were made on the vessel, and the steam pipes from the boilers to the engine were then annealed and tested by hydraulic pressure to double the working pressure, and were then found to be tight and sound in every respect. Lloyds'

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

surveyors again examined the vessel in August, 1919, giving her at that time, as stated by one of the surveyors, "a general look-over." No defect in the steam pipes was then noticeable, and questions then put to the vessel's engineer as to how its machinery and boilers were working elicited nothing which suggested the existence of a defect in the steam pipes. Expert evidence was adduced, which tended to prove that such a pipe as the one in question may be weakened or fractured by what is known as "water hammer," which is the force or blow to which a pipe containing water is subjected by a rush of steam pushing the solid mass of water, and that the strength of a pipe may be impaired as a result of frequently repeated water hammering, or it may be burst by one operation of that force, if the valve is opened suddenly and steam is let into a pipe in which water has accumulated. Unless steam is let in suddenly, a sound pipe, frequently subjected to water hammer, could reasonably be expected to withstand that force several years before breaking or becoming unsafe.

No one except the deceased was present when the casualty which caused his death occurred. It was not disclosed to what extent or how that pipe had been subjected to water hammer. It was exhibited to the trial court. The following was said in the opinion rendered by the presiding judge:

"Even after the pipe blew out, an examination of it has failed to show any defect in the pipe, much less one which could have been discovered by the most careful examination."

While the evidence did not furnish any satisfactory basis for a conclusion as to what was responsible for the bursting of the pipe, it was consistent with the theory that, shortly before it burst, it was subjected to undue strain by the negligence of some one in the use made of the appliance. The condition in which the pipe was found to be after it burst indicated that it had remained sound until it was fractured by the application of a force, other than the working pressure of steam, which a sound pipe could not withstand.

[2] It seems that under the evidence adduced the shipowner could not be held liable for the consequences of the bursting of the pipe, unless it had so far warranted that appliance as to be responsible to an employee injured by the bursting of it, though that would not have happened, but for the negligence of the injured person or a coemployee. We are not of opinion that the shipowner is to be held to have insured the adequacy or safety of that appliance. In The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, it was decided that a vessel was not responsible for injuries happening to one of its crew by reason of an improvident and negligent order of the master in respect of the navigation and management of the vessel. The opinion in that case contains a review of the authorities on the subject of the liability of a vessel or its owner for personal injuries received by a seaman while in the performance of his duty. The following is a quotation from that opinion:

"Upon a full review, however, of English and American authorities upon these questions, we think the law may be considered as settled upon the following propositions:

" * * * That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. Scarff v. Metcalf, 107 N. Y. 211.

"That all the members of the crew, except perhaps the master, are, as between themselves fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident.

"It will be observed in these cases that a departure has been made from the continental codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. This departure originated in England in the Merchants' Shipping Act of 1876, above quoted, Couch v. Steel, 3 El. & Bl. 402; Hedley v. Pinkney, etc., Co., 7 Asp. M. L. C. 135, [1894] App. Cas. 222; and in this country, in a general consensus of opinion among the Circuit and District Courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own."

The concluding paragraph of the above quotation indicates that it was the view of the court that the enactment of the English statute mentioned had the effect of making the English and the American law alike in the matter of allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness, or a failure to supply and keep in order proper appliances 'appurtenant to the ship. The statute makes it plain that under the English law such indemnity is not allowed when all reasonable means have been used to insure the seaworthiness and safety of the ship. We understand that under the American law the shipowner is not an insurer of such an appliance as the pipe in question, and is not liable for the consequences of the bursting of it, if due care was used in furnishing the appliance and in keeping it in safe condition and repair. As the evidence adduced failed to show that the shipowner, or any one for whose default he would have been responsible, was negligent in either of the respects mentioned, and as it was consistent with the theory that the bursting of the pipe was due to a fellow servant's negligence, the conclusion is that the court did not err in dismissing the libel.

The decree is affirmed.