### THE SANTURCE.

### SAUCIER v. NEW YORK & PORTO RICO S. S. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 27, 1922.)

No. 3833.

1. Seamen &⇒29(5)—Evidence held to sustain finding against negligence of shipowner with reference to oiling platform.

On libel to recover damages for injuries to an oiler employed on a steamship, evidence *held* to sustain the finding that the shipowner was not negligent in the construction or maintenance of the platform on which the oiler was engaged in the performance of his duties, when he fell and his foot came in contact with a moving crank shaft.

Appeal from the District Court of the United States for the Eastern District of Louisiana, New Orleans Division; Rufus E. Foster, Judge.

Libel in admiralty by Earl Saucier against the steamship Santurce, of which the New York & Porto Rico Steamship Company was claimant; to recover wages and subsistence and damages for personal injuries. From a decree for wages and maintenance only, refusing to allow damages, libelant appeals. Affirmed.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellant.

George H. Terriberry, Frazer L. Rice, W. W. Young and Joseph M. Rault, all of New Orleans, La., for appellees.

---

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The appellant, Saucier, libeled the steamship Santurce to recover damages for personal injuries sustained while performing his duties as an oiler during a voyage of said vessel. The vessel on August 24, 1919, was on the high seas on a voyage, and Saucier was oiling a portion of the engine of said steamship. To do this he was required to stand on a platform, 2 feet 4 inches long, situated among the machinery. The floor of the platform was equipped with a metal strip surrounding it 2³/₁₆ inches high. Above this strip there was a railing, consisting of a brass tube around the platform supported by stanchions, at a height of 2 feet 9 inches from the floor of the platform. The space between the 2³/₁₆ inch strip and the railing was entirely open. Next to the platform was a crank shaft of a high pressure engine which in its forward and downward motion cleared the platform only three-fourths of an inch. Saucier was standing on the platform, leaning over, holding an oil can in his right hand, and holding to the rail with his left. While in this position the vessel lurched, Saucier slipped and fell; his right foot went off of the platform into the machinery, and his foot was struck by said crank shaft. As a result of the accident, he lost the first joints of his large toe and second toe, and sustained a fracture of the instep and severe lacerations of his foot. He claimed that the rail on which he was holding was loose, and that it moved and gave under his weight as the vessel lurched, and caused his foot to slip, and based his right to recover upon the alleged unseaworthiness of the vessel, in that the platform was insufficiently protected from the machinery, and that the rail around the same was weak, loose, and insufficient.

He claimed in this libel the loss of wages and subsistence from August 24 to November 17, 1919, $385, and for damages for his injuries the sum of $1,500. The court rendered a decree in his favor for wages and maintenance in the sum of $167.84, and found against the claim for damages. The appeal is taken from the refusal of the court to find in favor of the libelant on his demand for damages.

We do not think there is any testimony in the record to indicate that there was any negligence on the part of the ship or its owners in regard to the platform upon which Saucier was standing, unless the evidence showed that the rail around the platform was in a defective condition, that such defect caused the accident, and that the master knew or should have known of such defect. The floor of the platform was protected by a strip over 2 inches high, entirely around, so as to prevent one from slipping therefrom. There is no suggestion in the record that the railing was not in good order when the vessel left port, nor that it had previously been out of order. The witness Street, who testified for the libelant that 10 minutes after the accident he found the railing loose, with a play up and down of 3 inches each way, testified that 30 minutes before the accident he had examined the railing and that the same was sound and strong. The chief engineer, McDonald, and the first assistant engineer, Small, testified that the railing was in perfect condition

and firm and strong, and that it was so after the accident as well as before.

The District Judge was of the opinion that it was—

"somewhat probable that the accident occurred by libelant carelessly placing his foot on top of the middle strip in the operation of oiling certain oil cups outside of the railing, when he was injured by the thrust of the crank shaft."

He further held that there was no want of proper diligence on the part of the shipowner in keeping the guard rail in proper condition, and that, even conceding that it was loose at the time of the accident, it was hardly possible that its condition was such as to cause libelant to slip.

The Court did not find that the hand rail was loose, and there was abundant evidence which warranted his refusing so to find. We think that the evidence in the case fully warranted the finding of the court against the libelant on the question of damages. Burton v. Greig (C. C. A.) 271 Fed. 271.

The decree of the District Court is therefore affirmed.