## COAST S. S. CO. et al. v. BRADY.

(Circuit Court of Appeals, Fifth Circuit. July 25, 1925.)

No. 4440.

**1. Seamen ⬡➞29(5)—Complaint in action by vessel's assistant engineer for injuries held to state case under Merchant Marine Act and general maritime law.**

In action for injuries sustained by vessel's assistant engineer when a wrench used by another struck him in the eye, complaint *held* to state a case under Act March 4, 1915, § 20, as amended by Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), and general maritime law, making a vessel and her owners liable to an indemnity for injuries received by seamen for failure to supply and keep in order proper appliances appurtenant to the ship.

**2. Seamen ⬡➞29(5)—Evidence held to justify holding that wrench by which plaintiff was injured was used in obedience to order of chief engineer.**

In action for injuries sustained by vessel's assistant engineer, when a wrench used by another struck him in the eye, evidence *held* to justify finding that wrench was used by plaintiff in obedience to order of chief engineer.

**3. Seamen ⬡➞29(4)—Assistant engineer, injured when using wrench in obedience to order of chief engineer, held not to have assumed risk.**

Assistant engineer on vessel, injured when using wrench in obedience to order of chief engineer, *held* not to have assumed risk of injury, unless such risk was obviously so dangerous that no man of ordinary prudence would have obeyed the order.

**4. Seamen ⬡➞29(5)—Danger of risk of injury from using wrench by which plaintiff was injured held for jury.**

In action for injuries sustained by vessel's assistant engineer, when a wrench used by another struck him in the eye, danger of risk of injury from using such wrench *held* for jury.

**5. Seamen ⬡➞29(4)—Immaterial that wrench by which assistant engineer was injured was a simple tool, where suit not based on any defect or unfitness for purposes for which wrench was designed.**

In action for injuries sustained by vessel's assistant engineer when a wrench used by another struck him in the eye, it was immaterial that wrench used was a simple tool, where suit was not based on any defect or unfitness for purposes for which wrench was designed.

**6. Negligence ⬡➞59—Injury natural, and probable cause of breach of duty actionable.**

To establish liability for negligence, it is sufficient if it appears that injury is a natural and probable consequence of the breach of duty, and it is unnecessary that party at fault should have contemplated his negligence would cause resulting injury, but a person guilty of negligence is liable for all consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, would, at time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**7. Seamen ⬡➞29(4)—Assistant engineer held not to have assumed risk of improper appliances by accepting employment or leaving on a voyage on a ship not properly equipped therewith.**

Vessel's assistant engineer did not assume risk of improper appliances by accepting employment or leaving on a voyage on a ship which was not properly equipped with appliances, unless it was a part of his duties to make requisition for all proper and suitable wrenches.

**8. Seamen ⬡➞29(5)—Whether assistant engineer had assumed duty of requisitioning for all proper and suitable wrenches held for jury.**

In action for injuries sustained by vessel's assistant engineer, when a wrench used by another struck him in the eye, whether plaintiff had assumed duty to make requisition for all proper and suitable wrenches *held* for jury.

**9. Appeal and error ⬡➞928(1)—Issue presumed to have been properly submitted to jury.**

An issue is presumed to have been properly submitted to jury, where there is no contention on appeal that evidence is insufficient to support the verdict.

**10. Seamen ⬡➞29(5)—Burden on assistant engineer to prove that wrenches on ship were unfit for work he was ordered to do.**

In action for injuries sustained by vessel's assistant engineer, when a wrench used by another struck him in the eye, burden was on plaintiff to prove that wrenches on the ship were unfit for work he was ordered to do.

**11. Witnesses ⬡➞252—Witness held properly allowed to illustrate his testimony and to make it clearer by reference to drawing prepared by him.**

In action for injuries sustained by vessel's assistant engineer, when a wrench used by another struck him in the eye, second assistant engineer *held* properly permitted to illustrate his testimony relating to cylinder head on which wrench was used, and to make it clearer by reference to drawing prepared by him, which, on comparison with photographs, appeared to have been reasonably accurate.

**12. Appeal and error ⬡➞216(1), 1068(4)—Charge on measure of damages held not ground for complaint.**

In action for injuries sustained by vessel's assistant engineer, charge explaining method of ascertaining present value of money payable in the future, and committing to jury's discretion such use of annuity table as they might consider proper in connection with other evidence as to impairment of earning capacity, *held* not ground for complaint, where defendants requested no charge on measure of damages, and verdict for plaintiff was not for a larger amount than it might reasonably have been if such charge had not been given.

**13. Damages ⊂⊃167—Evidence of probable duration of life of person in good health held admissible on question of damages.**

In action for injuries sustained by vessel's assistant engineer, evidence of probable duration of life of a person in good health, capable of standing an insurance examination, was admissible on question of damages.

**14. Appeal and error ⊂⊃1033(5)—Charge on measure of damages held beneficial to defendants.**

In action for injuries sustained by vessel's assistant engineer, charge that plaintiff was entitled to recover, not total of future loss from impairment of earning capacity, but only present value of such loss, *held* beneficial to defendants.

**15. Damages ⊂⊃212—Charge by which present value of plaintiff's future damages could be ascertained held not erroneous.**

In action for damages for injuries sustained by vessel's assistant engineer, charge as to method by which present value of plaintiff's future damages could be ascertained *held* not erroneous.

**16. Damages ⊂⊃165—Evidence as to present value of plaintiff's future damages held admissible.**

In action for damages for injuries sustained by vessel's assistant engineer, evidence as to present value of plaintiff's future damages *held* admissible.

**17. Appeal and error ⊂⊃928(4)—No assumption that trial court will refuse to give proper charges.**

It is not to be assumed that trial court will refuse to give proper charges.

In Error to the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Action by William S. Brady against the Coast Steamship Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

Jos. C. Rich and J. Gaillard Hamilton, both of Mobile, Ala., for plaintiffs in error.

Palmer Pillans and Alexis T. Gresham, both of Mobile, Ala. (Pillans, Cowley & Gresham, of Mobile, Ala., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an action at law against the owners of a steamship, to recover damages for a personal injury suffered by plaintiff while he was employed as first assistant engineer on the ship during a voyage from Mobile to Port Barrios, Guatemala. Plaintiff was ordered by the chief engineer to make some necessary repairs to the main feed pump which sup-

8 F.(2d)—2

plied water to the boilers. The repairs having been made, plaintiff was supervising and directing the work of replacing the head of one of the water cylinders of the pump, when a flat wrench, which was being used by another assistant engineer in tightening nuts on the head of the cylinder, slipped off of one of the nuts, struck plaintiff in the eye, and put it out. Portions of the pump extended above the head of the cylinder, and prevented the flat wrench which was used from lying in a horizontal position and retaining a firm grip on the nut, and rendered it necessary to elevate the free end of the wrench and place it around the nut at an angle of at least 20 degrees.

The negligence charged in the first count of the complaint was the failure of defendants to furnish a proper and suitable wrench. Defendants demurred to this count upon the principal grounds that section 20 of the Act of March 4, 1915 (38 Stat. 1185), as amended by section 33 of the Act of June 5, 1920 (41 Stat. 1007 [Comp. St. Ann. Supp. 1923, § 8337a]), is unconstitutional, and, if constitutional, that it is not applicable to equipment required on ships, that the wrench by means of which plaintiff was injured was a simple tool, and therefore plaintiff assumed the risk of injury involved in its use by himself or his fellow servants, and that the loss of plaintiff's eye was not a natural and probable consequence of the failure of defendants to supply and have available proper wrenches or appliances for use in places where, because of obstructions, a simple flat wrench was unfit or unsuitable.

The demurrer was overruled, and the trial was had upon a plea of the general issue, and a number of special pleas, to the effect that it was plaintiff's duty before leaving port to report to the chief engineer any lack of proper appliances, including wrenches, in the engineer's department, and that, because of his failure to perform that duty, plaintiff's injury was attributable to his own fault, that suitable and proper wrenches were on board and available to plaintiff, and that plaintiff placed himself dangerously close to the work being done on the pump, and therefore was guilty of contributory negligence and assumed the risk of being injured. A demurrer was sustained to several pleas which averred that, before shipping for the voyage or leaving port, plaintiff knew, or was chargeable with knowledge of, the kind of wrenches which were on board, and that he could have made one of them suitable for the work he was required to do by heating and bending it and thus avoiding

the obstructions which made it necessary to use a flat wrench at a dangerous angle.

There is another count of the complaint, which relies upon negligence on the part of the other assistant engineer in the manner in which he used the wrench which caused plaintiff's injury, and which also was submitted to the jury; but, as the verdict was a general one, it becomes unnecessary to consider the demurrer and the pleas to that count.

The evidence was in conflict on the issue whether the duty was imposed upon plaintiff to report to the chief engineer any deficiency in appliances on board ship. According to plaintiff's evidence, that duty was not imposed upon him. Witnesses for the plaintiff and defendants agree that the ordinary barrel or socket wrenches are the kind which were suitable for the work being done on the occasion of plaintiff's injury, and that there were none on board of the necessary size. Plaintiff testified that the flat wrench was used in obedience to an order of the chief engineer. The wrench that was used to tighten the nuts on the head of the water cylinder was as well adapted to that purpose as any of the other wrenches on the ship.

The second assistant engineer was a witness in the case and made a rough drawing, which was filed in evidence, of the cylinder head, for the purpose of illustrating his testimony. He was asked whether the drawing "to the best of your ability shows the water cylinders of the pump in question," and replied in the affirmative. Objection was made and exception taken on the ground that the question should have been whether the drawing was correct.

According to the American Mortality Tables, the life expectancy of a person of the class therein considered of plaintiff's age is 30 years, and the present value of an annuity of $100 at 8 per cent. per annum for a period of 30 years is $1,100. There was evidence tending to show that the impairment of plaintiff's earning capacity had been about $1,200 for each of the three years intervening his injury and the trial.

At plaintiff's request, the court gave the following charge on the measure of damages:

"If you find a verdict for the plaintiff and further find he was not guilty of contributory negligence, and if you are reasonably satisfied from the evidence that his earning capacity has been impaired permanently, then the measure of his damages for loss, during the remainder of his life, by reason of such impairment of his earning power, is such sum as, put out at 8 per cent. interest per annum, would, by taking part of the principal and all the interest each year equal the total of loss from impairment of earning capacity and would be exhausted at the end of his life expectancy. What is his life expectancy you will determine from all the evidence before you and relevant thereto, including the American Mortality Table, the condition of plaintiff's health, his habits, his occupation, and any other evidence that may reasonably seem to you to bear on this question of life expectancy. Having fixed the life expectancy, you take what you find from the evidence will be the amount of annual loss, by reason of permanent impairment of earning capacity and multiply this annual loss by the number of years in what you find to be his life expectancy. The result will be the total amount of future loss by reason of impairment of earning power. But the plaintiff is not entitled to be paid in a lump now in advance this total amount. What he is entitled to in this particular, if you find a verdict for him, is what is stated at the outset of this charge—a sum that, taking a part of the principal and all the interest each year, will equal the total of future loss from impairment and will be completely consumed at the end of the period of life expectancy. Such sum is styled the 'present value' or 'present worth' of the larger sum so capitalized into a present lump payment. In ascertaining what is the present value of the total of future lost earnings, you may use the annuity table in evidence, which shows the present value of $100 a year up to 40 years at 8 per cent. To apply this to the case now before you, take from the annuity table the present value of $100 a year for what you find the life expectancy to be, then multiply that sum by the number of hundreds in the annual loss of future earnings, and you have the present value of the plaintiff's lost future earnings."

The jury returned a verdict in plaintiff's favor for $15,000, but, upon a motion for a new trial, the District Court required a remittitur of $3,000, which was entered, and thereupon judgment was rendered for $12,000 upon the verdict.

The assignments of error complain that the trial court erred, in the rulings on the pleadings above set out, in admitting in evidence the drawing made by the second assistant engineer, and in giving the quoted charge.

[1-6] It has been held by the Supreme Court that the Merchant Marine Act (41

Stat. 988), is constitutional, and that the Employers' Liability Act (Comp. St. §§ 8657–8665), which renders carriers by railroad liable to employees for injuries resulting by reason of any defect or insufficiency in equipment, including appliances, was made applicable to steamships by the Merchant Marine Act as amended. Panama R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748. The complaint also states a case under the general maritime law, which makes a vessel and her owners "liable to an indemnity for injuries received by seamen in consequence of * * * a failure to supply and keep in order proper appliances appurtenant to the ship." The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760. There was evidence upon which the jury was justified in finding that the wrench by which plaintiff was injured was used by him in obedience to an order of the chief engineer. It therefore cannot be held that plaintiff assumed the risk of injury, unless such risk obviously was so dangerous that no man of ordinary prudence would have obeyed the order. Lafourche Packet Co. v. Henderson, 94 F. 871, 36 C. C. A. 519; 1 Shearman & Redfield on Negligence (6th Ed.) § 207h. The danger of the risk was a question of fact, to be determined by the jury. It is immaterial that the wrench used was a simple tool, as the suit is not based upon any defect or unfitness for the purposes for which the wrench was designed. In order to establish liability for negligence, it is sufficient if it appears that injury is a natural and probable consequence of the breach of duty. It is not necessary that the party at fault should have contemplated or anticipated that his negligence would cause the particular kind of injury which resulted; but a person guilty of negligence is liable for "all consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not), would, at the time of the negligent act have thought reasonably possible to follow, if they had occurred to his mind." 1 Shearman & Redfield on Negligence (6th Ed.) § 29.

[7-10] Plaintiff did not assume the risk of improper appliances by accepting employment or leaving upon a voyage on a ship that was not properly equipped with appliances. (The Osceola, supra), unless perhaps it was a part of his duties, as set up in one of the pleas, to make requisition for all proper and suitable wrenches. Whether plaintiff had assumed that duty was an is-sue which, the presumption is, was properly submitted to the jury, since there is no contention here that the evidence was insufficient to support the verdict. The other pleas of assumption of risk to which demurrers were sustained averred facts which were admissible under the general issue; for the gist of plaintiff's case is the failure of defendants to supply proper and suitable appliances, and it follows as a matter of course that the burden was upon him to prove that the wrenches on the ship were unfit for the work he was ordered to do.

[11] It was perfectly proper for the second assistant engineer to illustrate his testimony and to make it clearer if he could by reference to the drawing prepared by him which, upon comparison with photographs introduced in evidence by defendants, appears to have been reasonably accurate.

[12-17] It is insisted that the charge of the court on the matter of damages did not leave the jury at liberty to arrive at an amount based upon their knowledge and experience of human affairs, but required them to adopt a mathematical calculation and to fix absolutely, by reference to the annuity table, the amount of loss of plaintiff's earning capacity. If the charge reasonably sustains that interpretation, it would be erroneous under the decision of the Supreme Court in Vicksburg, etc., R. Co. v. Putnam, 118 U. S. 545, 7 S. Ct. 1, 30 L. Ed. 257. But we are of opinion that the charge is to be construed as merely explaining the method of ascertaining the present value of money payable in the future, and as committing to the discretion of the jury such use of the annuity table as they might consider proper in connection with all the other evidence in the case relating to the impairment of earning capacity. Evidence of the probable duration of the life of a person in good health, capable of standing an insurance examination, was admissible. It inured to the benefit of defendants that the jury were instructed that the plaintiff would be entitled to recover, not the total of future loss from impairment of earning capacity, but only the present value of such loss. It therefore was not error to instruct the jury as to the method by which present value could be ascertained. The evidence being admissible, it certainly was proper for the court to instruct the jury as to what use could be made of it. The jury were not instructed that they were bound by the annuity table, but that they might consider it. As far as the record shows, defendants

did not request any charge on the measure of damages. They could have submitted explanatory charges calling to the attention of the jury the probability that plaintiff might not always have employment and that his earning capacity in his declining years might be less than at the time of his injury. The court's charge required the jury to take into consideration all the evidence relating to plaintiff's health, habits, and occupation, and therefore charges to the effect just indicated would not have been contradictory or inconsistent with the charge which was given. It is not to be assumed that the trial court would have refused to give such charges, and if they had been given there would be no basis for the contention that it was intended to limit the jury to a consideration of the annuity table only in arriving at the present value of plaintiff's loss of earning capacity. The verdict as it stands, assuming that plaintiff, but for his injury, would have been able to enjoy reasonably constant employment, and remembering that it was proper for the jury to include damages for plaintiff's pain and suffering and disfigurement, is not for a larger amount than it might reasonably have been if the charge complained of had not been given.

Reversible error is not made to appear by any of the assignments, and the judgment is affirmed.