## GRANT v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

Circuit Court of Appeals, Second Circuit. November 14, 1927.

No. 41.

1. Seamen ⊂⊃29(5)—Whether chain rail, giving way when seaman seized it as wave struck him, was securely fastened, held for jury.

In action by seaman for personal injuries sustained when chain rail, which he seized when wave struck him, gave way, so that he was borne against coaming of ship and banged back and forth, suffering severe injuries, question whether stanchions holding chain had pins holding them in sockets, so that chain rail was securely fastened, held for jury.

2. Seamen ⊂⊃29(5)—Whether stanchions holding chain, which gave way when seaman seized it as wave struck him, were of sufficient strength to withhold ordinary storm, held for jury.

In action by seaman for personal injuries sustained when chain rail, held by stanchions, gave way as stanchions pulled out of sockets, when seaman seized chain as wave struck him, question whether stanchions were of sufficient strength to withstand ordinary storm held for jury.

3. Appeal and error ⊂⊃154(4)—That judgment in action for seaman's injuries awarding sum for maintenance and cure was entered on his motion did not affect his right to appeal.

In action by seaman for injuries caused by defendant's alleged negligence in failing to provide safe place to work, mere recital, in judgment awarding sum to cover maintenance and cure only, that it was granted on motion of seaman's attorney, was no acceptance of benefit under it, which could affect his right to appeal.

4. Seamen ⊂⊃29(4)—Shipowner cannot avoid liability for injury to seaman on ground that seaman knew of defect in appliance.

Shipowner cannot avoid liability for injury to a seaman by a defective appliance on ground that seaman knew of defect.

In Error to the District Court of the United States for the Eastern District of New York.

Action by George Grant, a seaman upon the steamship Afoundria, employed as a saloon messman, to recover damages of the United States Shipping Board Emergency Fleet Corporation for personal injuries caused by defendant's alleged negligence in failing to provide plaintiff with a safe place

within which to work, and particularly in failing to secure stanchions and chain rails on the vessel, whereby she was rendered unseaworthy. Judgment directing a verdict for the defendant upon the cause of action for negligence and unseaworthiness, but allowing the plaintiff a sum of money for maintenance and cure, and plaintiff brings error. Reversed, and new trial ordered.

Plaintiff was employed as a messman on the defendant's ship Afoundria on a voyage from Mobile, Ala., to Liverpool, and one of his duties was to carry the officers' meals from the galley up to the saloon. The galley was located in a house on the after end of the bridge deck, and the saloon in a house on the forward end of that deck under the bridge. The distance between the galley and the saloon on the open bridge deck was about 37 feet. In the center of this bridge deck was a hatch, about 18 or 20 feet square, with a coaming around it about 18 inches high. For the purpose of loading the vessel through this hatch, the bulwarks or solid rails along the greater length of the vessel were not extended on the port and starboard sides of this deck over this 37 feet. Instead, a chain rail was provided, consisting of two chains running parallel with the deck, sustained by iron or steel stanchions, which were set in sockets about 5 feet apart, fastened to a metal coping running along the sides of the deck.

At the time of the accident the plaintiff was coming from the galley to the dining saloon in order to take some food to the officers. When he stepped out on the deck, he saw a wave breaking over the starboard side. According to his testimony, he tried to duck it, but was swept against the chain rail on the port side. He testified that he seized the lower chain, but some of the stanchions came out of their sockets, so that, though clinging to the chain, he had no stable support, and was borne against the coaming of the ship and banged back and forth upon it as the ship rolled, suffering severe injuries. He was taken to safety by two seamen. Plaintiff testified that his body did not strike any of the stanchions, and the effect of his testimony is that he was swung back and forth on the ship's coamings by reason of the fact that the stanchions gave way and the flexible chain, which he had seized, gave him no solid support, as it swung out over the port side of the vessel. Each of the stanchions was set in a socket, and through the socket, when the stanchion was properly fastened, a cotter pin was inserted to prevent the stanchion from slipping out. The plaintiff testified

that he had seen one or two of the stanchions, a couple of days after the ship left Mobile, lying on the deck, half suspended from the chains, which passed through the sockets, and that he replaced them. He said that on three voyages he had made on the ship he had observed that some of the stanchions did not have pins, but could not state from personal observation that they lacked their cotter pins at the time of the accident.

Crosby, a seaman who was called as one of the plaintiff's witnesses, said that he did not see the accident, but 10 or 15 minutes thereafter found a stanchion post on the port side of the ship out of its socket, and was quite sure there were no cotter pins in the stanchions, and found none in the stanchions down.

Steensnes, another witness for the plaintiff, who saw the accident, said that he never saw any pins on the stanchions; that when they took out the stanchions to load the hatch they replaced them in their sockets, which were about 4 inches deep, without any pins. He also said that, when four or five of the stanchions which had been swept out of their sockets were replaced after the accident, there were no pins to put in.

The plaintiff also called the witness Henriques as an expert, who said that, in view of the fact that the weather was rough and there was a reasonable chance of seas breaking over the bridge deck (though 20 feet above the surface of the water), life lines should have been stretched across such an open place along the center of the deck. It was his contention that the plaintiff would have been near such a life line when the wave struck him, and that the chain rail did not serve as an adequate substitute, because the plaintiff was swept against it, whereas he could have clung to a life line in the center of the ship, without being swept with violence in any direction. Henriques also said that the shearing strength of a cotter pin was about five tons, and that there could be no pull caused by a wave striking the stanchions and chains sufficient to sheer off or pull out the pin. This he said was particularly true, since the wave had come from the starboard side of the ship, must have hit the hatches, and struck the chain with diminished force.

Defendant's witness Ryan, who saw the accident, testified that several of the stanchions pulled out, and the ends of cotter pins were broken off and hanging to chains attached to the stanchions; but he admitted that he did not know whether cotter pins were placed in the bottom of the stanchions to

hold them in place before the accident happened.

Moore, another witness for the defendant, who saw the accident and helped rescue the plaintiff, said that he did not remember seeing any cotter pins on the stanchions that gave way, though he had seen them on other stanchions.

The chief officer of the vessel, who was charged with the duty of seeing that the things on deck were shipshape when leaving for sea, testified that he inspected the stanchions the day the ship left Mobile, and saw that cotter pins were in place, and that they were replaced immediately after the accident, when he found them sheered off.

The boatswain, Coyle, another of defendant's witnesses, testified that he heard the sea break, saw the plaintiff being rescued by several men, and then found three or four stanchions hanging on their chains. He said that he had placed the cotter pins in the sockets just as the vessel left her dock in Mobile, but that after the stanchions came out he found at least two of the cotter pins broken, and others bent out of shape and pulled through the sockets.

Milhizer testified that a storm would pull stanchions out of their sockets, even though the cotter pins were in place.

Defendant's expert McDonald testified that it was unnecessary to stretch life lines on a bridge deck 20 feet above the water, and also said that he had seen stanchions swept out by a storm and cotter pins which had formerly held them broken off.

The trial judge held that the plaintiff had offered no proof of negligence, and had shown only that he had been swept by an unusual wave against the ship's coaming, and that when he seized the chain rail some of the stanchions gave way. Accordingly a verdict was directed for the defendant upon the cause of action brought to recover for negligence, and recovery allowed simply for maintenance and cure.

Silas B. Axtell, of New York City (Lucien V. Axtell and Charles A. Ellis, both of New York City, of counsel), for plaintiff in error.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Edgar G. Wandless and Frederick H. Cunningham, both of New York City, of counsel), for defendant in error.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). It seems difficult to account for the accident to the plaintiff, if the stanchions were securely held in their sockets by cotter pins. The weather was rough, but we find nothing in the record to show that it was very extraordinary. The wave which struck the plaintiff and swept him against the chain rail came from the other side of the ship, and would almost inevitably be somewhat broken in force before it reached him. It seems difficult to suppose that such a wave, when striking the chain rails and stanchions, even with the added weight of the plaintiff accompanying it, would exert sufficient force to lift the stanchions out of their sockets, if the cotter pins had been in place. It is to be noted that the only testimony about the stanchions themselves shows that they were not bent and were immediately replaced in their sockets. Therefore they must have been lifted, and not pried out, by the force of the wave, for in the latter case they would almost surely have been bent.

[1] The testimony of the plaintiff that he found one or two stanchions out of their sockets, half suspended on the chains, after the ship left Mobile, and replaced them, and that on three trips which he had taken upon the vessel he had observed that some of the stanchions did not have pins, tended to show a habit of neglect to fasten the stanchions to the ship. To this was added the testimony of plaintiff's witness Crosby that immediately after the accident there was no cotter pin in one of the stanchions which he found out of its socket, and that he was quite sure the stanchions in general lacked pins; and the testimony of Steensnes that he removed the stanchions when No. 3 hatch was loaded at Mobile and reset them without cotter pins, and that he helped put the stanchions in place after the accident and found no pins. It is true, if the cotter pins had been in place, but were broken by the force of the wave which lifted out the stanchions, they would doubtless have been broken or bent, as some of defendant's witnesses said was the case; but plaintiff's witnesses found no such condition. It is clear that the testimony offered on behalf of plaintiff, showing a habit of neglect to fasten the stanchions properly, coupled with the testimony that there were no pins found after the accident, raised a question for the jury as to whether the chain rail was securely held.

[2] Moreover, the testimony that the force exerted upon the chain rail was insufficient to pull out the stanchions if they had been held by cotter pins, or to sheer the cotter pins, tended to render it improbable that any cot-

ter pins were there. On the other hand, if it be assumed that they were in place, there was still a question for the jury as to whether the weather, though rough, was so unusual that stanchions with sufficient fastenings to resist the kind of gales which the ship might be expected ordinarily to meet would have been lifted from their sockets. The question whether the stanchions were properly fastened, and whether, aside from this, the fastenings were of sufficient strength to withstand the ordinary storm, was presented by the record, and should have been submitted to the jury. A direction for the defendant in such circumstances was plainly error.

In view of the foregoing error, it seems unnecessary to determine whether life lines should have been placed on the bridge deck, which in this case was 20 feet above the surface of the water. Zinnel v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 10 F.(2d) 47, does not govern, for in that case there was no rail at the ship's side; the only protection the seaman could have was from a life line. There is strong ground for the contention made by the defendant here that a proper chain rail was a sufficient protection for a seaman who had to cross a relatively short space upon a deck so high above the water, where waves sweeping the deck would not be likely to be as frequent or to have as much force as on the lower decks, where life lines are usually run. Indeed, there is reason to believe that the chain rail would have protected the plaintiff from any injury, if it had stood firm. A strong record ought to be presented to show the necessity of life lines in the situation disclosed, and it is hard to see why the plaintiff should hazard so doubtful a point, where there would seem to be ample evidence to present to a jury on the issue of neglect to fasten the stanchions securely.

[3] There is no merit in the contention that the plaintiff cannot appeal, because the judgment was entered on his motion. Three hundred dollars were awarded to him to cover maintenance and cure, so that the judgment was partly in his favor. The mere recital that it was granted on the motion of his attorney was no acceptance of the benefit under it, that could affect plaintiff's right to appeal. Butte & B. Consol. Mining Co. v. Montana Ore, etc., Co. (C. C. A.) 121 F. 524; In re Wood (C. C. A.) 278 F. 355.

[4] In respect to the defense of assumption of risk, no more need be said than that a shipowner cannot avoid liability for injury to a seaman by a defective appliance, on the ground that the seaman knew of the defect.

Cricket S. S. Co. v. Parry (C. C. A.) 263 F. 523; Panama R. Co. v. Johnson (C. C. A.) 289 F. 964, affirmed in 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Zinnel v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 10 F.(2d) 47.

The judgment is reversed, and a new trial granted.