PITTSBURGH, S. S. CO. v. PALO.

No. 6115.

Circuit Court of Appeals, Sixth Circuit.
March 13, 1933.

Carl A. Schipfer, of Cleveland, Ohio (Blake Womer, McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, on the brief), for appellant.

M. C. Harrison, of Cleveland, Ohio, for appellee.

Before MOORMAN, HICKENLOOPER and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

This was an action under the Jones Act, § 33 (46 USCA § 688), to recover for alleged negligent injury to Eugene J. Palo, the appellee, while he was employed as a seaman in the service of appellant aboard the bulk freighter Zenith City. Palo alleged two injuries, respectively on or about June 26, 1930, and July 30, 1930. Just how the first alleged accident happened does not very clearly appear. Palo testified that he was told to go below to the boiler room and there hook the "pelican hooks" to the rudder chains of the emergency or hand steering gear. These rudder chains ran in wooden troughs supported by hanging iron brackets. The pelican hooks were merely large hooks attached to the end of a chain, weighing about twenty-five pounds each, and having a hinged jaw which could be opened and closed, and, when closed, could be locked with a cotter pin. The function of the pelican hook chains is immaterial.

Although it seems to be conceded by counsel that the general instructions were to use a ladder while doing this work, plaintiff testified that he had seen another seaman do it while standing upon the "smoke breeching"

and leaning over with his chest against the hanging trough. On the occasion of his alleged injury he testified he had adopted the latter method. He first attached the pelican hook on the starboard side. There he had no difficulty. "The wheel hadn't vibrated the chain back and forth, so that on the starboard side my arm wasn't caught between the shackle and the overhead brace. If it had, I would have been caught on that side, too." The shackle (to which the pelican hook was to be attached) was described as "at least two or three inches above that chain trough."

When he came to the port side, plaintiff had his arm over the top of the trough "holding the shackle," and kept it "traveling on top of the shackle, so as to hold the shackle in place." This was within a few inches of the bracket. On direct examination he says: "I had a chance to get the pelican hook; just when I had a chance, getting the chance to put the pelican hook in the shaft bolt [shackle(?)] the chain lunged forward and caught my arm in between the bracket, the trough." On cross-examination he said that his arm was "pinched between the bracket and the trough"; and there was testimony that the trough was old and worn, that the hole through which the bolt ran, which attached the trough to the bracket, was enlarged, and that the trough could be moved laterally about an inch and a half within the bracket. No report was ever made of this accident by plaintiff to his superiors, and the evidence is extremely difficult to reconcile or understand, except upon the hypothesis that the plaintiff's arm was caught and pinched between the shackle and the hanging bracket.

On the occasion of his second alleged injury plaintiff testifies that he was again ordered to attach the pelican hooks, and that, this time, he used a ladder provided for the purpose; that again he first attached the hook on the starboard side; and that on that side "the ladder was all right." He then took the ladder to the port side and he "couldn't get it to stand level on account of the plates [upon which it rested] overlapping." He had started to climb up it when it "slipped to the right, throwed me off my balance. I had to catch myself with my left arm [the one alleged to have been previously injured]. I hung suspended for about five seconds, looked down where I could land, and let myself fall to the top of the boiler, and my arm started to swell up right away." The ladder did not fall, but after the event the plaintiff testifies he found "the rungs were all loose, you could shake it, sort of see-saw." After the accident, plaintiff placed the ladder more securely and finished affixing the pelican hooks.

Here again it is difficult to reconcile the conflicting evidence or to see why, if the condition of the ladder was as plaintiff described it, this condition was not observed when the ladder was used on the starboard side, or why, if there was vertical play in the uprights, any difficulty was experienced from the different levels of the plates upon which it rested. In no single respect was the testimony of plaintiff corroborated by the officers or other members of the crew.

It is urged by appellant that the District Court erred in its refusal to direct a verdict, with respect to both the causes of action, upon the ground that the risk was assumed. The charge upon this subject, as given, was quite as favorable to the defendant as could reasonbly have been asked, and we are of the opinion that the defendant was not entitled to a peremptory instruction on this ground. The language of the Jones Act is, that "in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply," and while there are some decisions which seem to hold that by reason of its enactment the entire common law of master and servant, as enforced on land, was incorporated by reference into the maritime law, we are of the opinion that this is not the better view. As was said of the section (38 Stat. 1185, § 20), of which the present act is an amendment, the language used does not disclose a purpose upon the part of Congress to impose upon shipowners "the same measure of liability for injuries suffered by the crew while at sea as the common law prescribes for employers in respect of their employees on shore." Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 384, 38 S. Ct. 501, 504, 62 L. Ed. 1171. It is only in respect of the "right or remedy" of the seaman, and not in respect of the defenses which theretofore might have been asserted at common law though not in admiralty, that new rules have been brought into the maritime law by the enactment.

Doubtless a seaman still assumes the ordinary risks of his employment (The Iroquois, 194 U. S. 240, 243, 24 S. Ct. 640, 48 L. Ed. 955), but we do not think that he assumes the risk of injury even from obvious dangers if they arise from "a failure to supply and keep in order the proper appliances

appurtenant to the ship." The Osceola, 189 U. S. 158, 175, 23 S. Ct. 483, 487, 47 L. Ed. 760. This is a duty which has been held positive and nondelegable. Thompson Towing & Wrecking Ass'n v. McGregor, 207 F. 209 (C. C. A. 6). Extraordinary risks arising from its breach are not assumed, even if the danger is at the time obvious to the seaman. Howarth v. U. S. Shipping Board Emergency Fleet Corp., 24 F.(2d) 374 (C. C. A. 2); Coast S. S. Co. v. Brady, 8 F.(2d) 16 (C. C. A. 5); Globe S. S. Co. v. Moss, 245 F. 54 (C. C. A. 6); States S. S. Co. v. Berglann, 41 F.(2d) 456, 458 (C. C. A. 9); Cricket S. S. Co. v. Parry, 263 F. 523 (C. C. A. 2); Grant v. U. S. Shipping Board Emergency Fleet Corp., 22 F.(2d) 488 (C. C. A. 2).

But conceding that the risk of injury was not assumed in the present case, all the authorities seemingly proceed upon the hypothesis that, in order to maintain an action under this section, negligence (as defined by the common law) must be shown. Cf. Panama R. R. v. Vasquez, 271 U. S. 557, 559, 46 S. Ct. 596, 70 L. Ed. 1085; Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 324, 47 S. Ct. 600, 71 L. Ed. 1069; Lindgren v. United States, 281 U. S. 38, 46, 50 S. Ct. 207, 74 L. Ed. 686. The shipowner is not an insurer of the safety of his seamen, and the burden of establishing negligence rests upon plaintiff. Burton v. Greig, 271 F. 271 (C. C. A. 5). In the instant case we are of the opinion that this burden has not been sustained; but before pursuing this point further it is not out of place to refer briefly to what we also regard as an erroneous position assumed by the court below.

The case was submitted to the jury as if upon a single cause of action. It is obvious that if the defendant was not liable upon the first cause of action stated, but was held liable upon the second, the measure of damages would be only such sum as would fairly and reasonably compensate the plaintiff for the aggravation of his then existing condition; although the converse of this would not be so if some such use of his arm as was made at the time of his second accident might reasonably have been anticipated as probable. However, this distinction should have been made clear to the jury.

But we think that the court committed a more fundamental error in not directing a verdict for the defendant for want of substantial evidence of negligence in respect of both causes of action. In neither were facts shown which should lead the defendant to

anticipate the danger of injury to its seamen by virtue of the existing condition of the ship's appliances. Whether or not the fact that injury of some sort might reasonably have been foreseen bears a proper part in the application of the doctrine of proximate cause (see Johnson v. Kosmos Portland Cement Co. (C. C. A.) 64 F.(2d) 193, and Smith v. Lampe (C. C. A.) 64 F.(2d) 201, decided at this session), it is now firmly established that no act or omission may be considered negligent, unless the danger of injury was reasonably foreseeable. In Lincoln Gas & Electric Co. v. Thomas, 74 Neb. 257, 260, 104 N. W. 153, 154, the court thus expressed the same thought: "It is of the essence of actionable negligence that the party charged should have knowledge that the act complained of was such an act of omission or commission as might, within the domain of probability, cause some such an injury as that complained of." In Hope v. Fall Brook Coal Co., 3 App. Div. 70, 75, 38 N. Y. S. 1040, 1043, the court says: "The circumstances necessary to be known before the liability for the consequence of an act or omission will be imposed must be such as would lead a prudent man to apprehend danger." See, also, Burton v. Greig, supra; Waters-Pierce Oil Co. v. Van Elderen, 137 F. 557 (C. C. A. 8); Carey v. Baxter, 201 Mass. 522, 525, 87 N. E. 901; Stedman v. O'Neil, 82 Conn. 199, 72 A. 923, 22 L. R. A. (N. S.) 1229; Wickert v. Wisconsin Central R. Co., 142 Wis. 375, 125 N. W. 943, 20 Ann. Cas. 452. In view of these decisions, and many others, it is not sufficient to show simply that a defect existed; the defect must be of such nature that the defendant should reasonably have apprehended the danger of injury.

In regard to the first alleged accident, in the present case, there was no showing whatever that the defendant should have anticipated that a seaman would attempt to attach the pelican hooks in the manner in which the plaintiff attempted to do it. A ladder was provided for this use, and for this use alone, and the injury was the proximate result of the way in which a very simple task was performed, not of any inherent defect in the appliances. The plaintiff did not foresee the danger of injury, and we do not think that knowledge of the danger of an accident happening in this manner should be imputed to his master.

The same is true of the second alleged accident. Certainly a ladder is an extremely simple appliance. The plaintiff found it to be "all right" when he used it on the star-

board side of the vessel. He used it without difficulty and without danger after the accident. Even conceding that there may have been some play in the uprights, due to wear, and that it was subsequently strengthened by applying a crossbrace, the evidence is overwhelming that it was apparently safe for use. A ladder frequently is perfectly safe for use notwithstanding the presence of some play of this sort. Here again, also, the manner of its use may have been wholly responsible for its failure, if failure there was. It did not break. It appeared safe to the plaintiff, and it was safely used by him after the alleged accident when care was exercised in placing it. We do not think that any danger should reasonably have been foreseen.

We are well aware that ordinarily this question is one for submission to the jury, but in the present case there is no evidence more strongly supporting the inference that danger should have been anticipated than the opposing inference. Under such circumstances the plaintiff may not recover. The cases upon this point are collected in Pennsylvania R. R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. ——, decided by the Supreme Court February 13, 1933, to which reference is made.

The judgment of the District Court is reversed, and the cause is remanded for a new trial.