80 F.2d 792 (1936)
THE TAWMIE.
HADDIX et al.
v.
O'BRIEN.
No. 7789.
Circuit Court of Appeals, Fifth Circuit.
January 6, 1936.
*793 H. C. Hughes, of Galveston, Tex., for appellants.
Brantly Harris, of Galveston, Tex., for appellee.
Before FOSTER and HUTCHESON, Circuit Judges, and STRUM, District Judge.
STRUM, District Judge.
In an action in rem against the yacht Tawmie, libelant Frank O'Brien was awarded $1,000 damages for personal injuries. Claimant appeals.
O'Brien, a member of the crew, was directed to go below and spray out the passenger staterooms to clear them of mosquitoes. He used one of several spray guns found amongst the vessel's equipment. These spray guns are much like a small bicycle pump, and operate on the same principle, having a small tank, holding the exterminating liquid, at the outer end of the barrel. The action of the plunger of the pump, when operated in and out by hand, forces air into the tank which sprays the liquid out through a small nozzle. The barrel of the gun is held in one hand, while the plunger is worked in and out by the other. While libelant was thus operating the gun, the metal cap covering the inner end of the barrel came off, thus exposing the sharp edge of the pump barrel, which is made of thin metal. When libelant again quickly thrust the plunger forward, the middle finger of his right hand went into the open barrel, bringing the posterior surface of the finger in violent contact with the exposed edge, thus severely cutting the finger and damaging the exterior tendon of the last two phalanges. The latter has resulted in about 25 per cent. loss of flexion in the finger, which apparently is permanent.
Libelant charges that the owners of the vessel were negligent in furnishing him with and ordering him to use a defective spray gun which had not been inspected, and that such defective apparatus rendered the vessel unseaworthy in contemplation of law. The Osceola, 189 U.S. 158, 159, 23 S.Ct. 483, 47 L.Ed. 760. The defect complained of is that the cap which carried away was "crimped" into the end of the barrel, instead of being secured with a set screw or solder.
A shipowner is not an insurer of the safety of his seamen, nor is the owner liable for injuries caused by the breaking of apparatus if due care was used in furnishing the appliance and keeping it in safe condition and repair. The burden of establishing negligence by a fair preponderance of the evidence rests upon libelant. Burton v. Greig (C.C.A.) 271 F. 271.
Though shipowners are held to a strict degree of diligence, seaworthiness does not require absolute perfection, nor are owners held to the duty of furnishing appliances having the highest known degree of safety. It is sufficient if the equipment be that which is reasonably fit and safe for its purpose, and reasonably adequate to the place and occasion where used by direction of the owners. Adams v. Bortz (C.C.A.) 279 F. 521, 523. It is *794 not sufficient to establish liability to show simply that a defect existed. The defect must be of such nature as would lead an ordinarily prudent man to apprehend danger of injury from it. Pittsburgh S. S. Co. v. Palo (C.C.A.) 64 F.(2d) 198.
The testimony shows that this and other spray guns of this identical type have been in use for this purpose over and over for long periods of time, without accident. This was the type usually and customarily used for the purpose. It is not shown that the gun was worn or otherwise defective or out of repair. Cf. Storgard v. France and Canada S. S. Corp. (C.C.A.) 263 F. 545; The Navarino (D.C.) 7 F.(2d) 743. On the contrary, the testimony is that the gun was a new one. It is undisputed that there were several spray guns of this type aboard the vessel, of which libelant knew. He chose the particular gun he would use. Cf. The Birkenhead (D.C.) 51 F.(2d) 116. He points out, however, that all the other guns were probably of the same type, having "crimped in" caps, whereas a gun with the cap secured by a set screw was available in the market, and should have been supplied by the vessel. It is not denied that such a type of gun existed, and it may be that they are more sturdy than the type furnished libelant. Whether there were any of this type aboard does not appear, but the type furnished has long been in common use for the purpose, for which it had proven adequate and sufficient. The testimony shows that they are commonly used with impunity, even by children. The mere fact that the cap was "crimped" in, instead of being held by a set screw is not alone sufficient to condemn the gun as defective, in view of the long and satisfactory use of that identical device and its undenied suitability for the purpose. Though a superior type may exist, it appears from the evidence that the type furnished was reasonably safe and adequate when properly operated. There was nothing in the structure of the spray gun to lead a reasonably prudent owner to apprehend danger to persons properly operating it.
Assuming that the vessel was rolling slightly, of which there is some intimation in the evidence, libelant does not claim that the roll of the vessel threw him forward on the gun at the critical moment. His claim is that his "finger went down in there before I (he) realized that the plunger came out"; and that his "hand lost control in making that motion." These statements, as well as the physical facts, strongly indicate inattention and improper use of the gun. There is testimony that it was necessary to work the plunger rapidly in and out to build up air pressure in the tank. Even so, libelant is not thereby absolved from reasonable caution in using it. When the cap came off, no damage was done. It was the act of libelant in again pushing the plunger violently forward, after the cap had come off and the plunger itself had come outside the barrel, that proximately caused his injury. At most, the breaking of the cap was a remote cause. Had libelant not heedlessly pushed the plunger forward again after the gun was obviously out of order, no harm would have come to him from the breaking of the cap. This intervening and efficient act of libelant, which the facts in evidence do not condone, was not merely a contributing cause, it was the sole proximate cause, of his injury.
Libelant's injury being due, not to any defect in the gun, but solely to his own improper and inattentive use of it, the vessel is not liable for indemnity. The Nyack (C.C.A.) 199 F. 383, 390; Burton v. Greig (C.C.A.) 271 F. 271; The Daisy (C.C.A.) 282 F. 261; Patton-Tully Transp. Co. v. Turner, (headnote 8) 269 F. 334 (C.C.A.); Johnson v. Frederick Leyland & Co. (C. C.A.) 153 F. 572.
Entirely apart from the question of negligence and unseaworthiness, however, and notwithstanding the vessel's nonliability for indemnity, libelant is entitled to a reasonable sum for maintenance and cure. Pacific S. S. Co. v. Peterson, 278 U.S. 130, 134, 49 S.Ct. 75, 73 L.Ed. 220, 222; The Eastern Dawn (D.C.) 25 F.(2d) 322; Kahyis v. Arundel Corp. (D.C.) 3 F.Supp. 492, 495; The James E. Ferris (D.C.) 1 F.Supp. 1018, 1027. For this purpose we find libelant entitled to $300. The judgment appealed from is modified to award libelant recovery from the vessel of said sum, and as so modified is affirmed.