## THE E. B. WARD, JR.

*Circuit Court, E. D. Louisiana.* June 5, 1884.

**1. MARINE TORT—LIABILITY OF SHIP—NEGLIGENCE OF FELLOW-SERVANT.**
 In the admiralty, no more than elsewhere, should the owner, without fault himself, be held as a general warrantor of the competency of any of his servants to the others, all alike engaged in the common employment of navigating the ship.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**
 Nor in the admiralty should one, as a general rule, be compensated in damages who has, by his own fault, contributed to bring about his own injury. *The Wanderer, ante,* 140, distinguished.

Admiralty Appeal.

*Emmet D. Craig,* for libelant.

*J. Ward Gurley, Jr.,* for claimant.

PARDEE, J. James Breslin, in April, 1883, shipped as engineer on the steam-ship E. B. Ward, Jr., plying between New Orleans and Central America. The ship sailed at midday on the twenty-eighth of April, 1883, and on the first night out, when in the Gulf of Mexico, between 8 P. M. and 12 midnight, he went on watch in the engine-room. At about 12 o'clock he called a fireman to take his place until he could go on deck to the lunch-room and get his lunch, which was set out from 6 P. M. to daylight, for all who were on duty during the night. In ascending from the engine-room upon the deck, on his way to the pantry, he stubbed his foot against the curbing of the hatchway, and fell over into the open space several feet to the bot-

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

tom, striking against obstructions on the way and catching at them until he reached the floor, where he lay stunned a short time, and then attempted to alarm the crew by his cries, but, failing to be heard, he scrambled up the hatch as best he could, and reached the engine-room in an exhausted condition. The Ward being engaged in the fruit trade, although at the time having no fruit on board, as she was bound to the fruit islands for a cargo, was provided with a sort of railing some three and a half or four feet high, called a booby hatch, through which the air could pass, and which at the same time served as a protection around the hatchway so as to prevent accidents of the kind that did happen to Breslin. The officers neglected on this occasion to place this hatch on, although the owner testifies that it was his instructions to keep this booby hatch on, and adds that if it had been on this accident would not have happened. There were no lights about the hatch, although the ship had her regular lights for navigation, and, to make the hatchway more obscure, an awning was spread over it some distance above. Breslin was seriously injured by his fall, being badly bruised and having a rib probably fractured, and he was laid up unfit for work for three months or more. The weight of the evidence, although there is much conflict, is that it was customary on the Ward for the engineer on duty during the night-watches to leave the engine and engine-room to go to another part of the vessel to get lunch, although from the evidence of the master and owner such custom was not with their authority, and was against the rules of the vessel.

Upon the whole case, after much consideration, I conclude, (1) that the booby hatch should have been placed over and around the hatchway, and that it was not so placed, through the neglect of the officers of the vessel; (2) that it was not the duty of the libelant, though one of the officers, to see that the booby hatch was properly placed; (3) that notwithstanding the prevailing habit or custom on the Ward for the engineer to leave his duty, without competent relief, in the night-time, to seek lunch or anything else, in a distant part of the vessel, the libelant was in fault in leaving his post for the purpose he did, and that his so leaving his duty, as aforesaid, and thus endangering the safety of the vessel, was a gross breach and neglect of duty.

In this connection it is proper to state that there is evidence in the record tending to show that the lunch was provided on the Ward for the officers to partake of in going on and coming off watch in the night-time, and was not intended as an invitation for officers on duty to quit their stations. And it would seem that no matter how slack and easy-going the discipline and rules may be on steam-ships on the high seas, a habit or practice for the engineer to leave his post without proper relief ought not to be countenanced.

The case, therefore, is one where the libelant has been injured through the negligence of the other officers on the vessel, while he himself was grossly neglecting his own duty to the ship and her own-

ers. In the courts of law and equity the rule is well settled that a master is not liable to his servant for the negligence of a fellow-servant while engaged in the same common employment, unless he has been negligent in his selection of the servant in fault, or in retaining him after notice of incompetency. Nor does the master warrant the competency of any of his servants to the others. Shear. & R. Neg. § 86. See, also, Moak, Underh. Torts, rule 14. In the present case there might, perhaps, be a question as to whether, as between the libelant and the master of the ship, there was that common employment, as the master commands and controls the whole ship and crew; but then, to make it pertinent, there should be evidence to show that the negligence resulting in injury was attributable to the master. It is also well settled in the same courts, as a general rule, that one who is injured by the mere negligence of another cannot recover any compensation for his injury if he, by his own negligence or willful wrong, proximately contributed to produce the injury of which he complains. See Shear. & R. Neg. § 25. Courts of admiralty administering maritime law are not bound by these arbitrary rules; but so far as they are applicable to cases arising within admiralty jurisdiction, the reasons of justice and equity on which they are founded are proper considerations for the court that in such cases exercises a large discretion under all the circumstances of the case in giving or withholding damages in cases of maritime torts and injuries. In the admiralty, no more than elsewhere, should the owner, without fault himself, be held as a general warrantor of the competency of any of his servants to the others, all alike engaged in the common employment of navigating the ship. Nor in the admiralty should one, as a general rule, be compensated in damages who has, by his own fault, contributed to bring about his own injury.

In the present case I am clearly of the opinion, under all the circumstances, that it is not one where the libelant is entitled, in reason or justice, to damages against the claimant. It seems that the libelant was furnished with such care and attendance as were within the means of the ship, and was brought back to this port and paid his wages, so that there is no claim of any neglect of duty by the ship in these respects.

In the case of *The Wanderer, ante*, 140, recently decided, the libelant was given costs, but the contributory fault in that case was trivial compared with the neglect of duty in this, and there were other circumstances to distinguish that case.

A decree will be entered dismissing the libel herein, with costs of both courts.