**BENTON**

v.

**UNITED TOWING CO. et al.**

No. 26407.

United States District Court,
N. D. California, S.D.

April 9, 1954.

George H. Hauerken and Hauerken, St. Clair & Viadro, San Francisco, Cal., for libelant.

John H. Black, Edward R. Kay, San Francisco, Cal., Appel, Liebermann &

Leonard, San Francisco, Cal., for respondent.

HAMLIN, District Judge.

In this action the libelant Robert K. Benton, hereinafter called Benton, filed an action against United Towing Co., hereinafter called Company, to recover damages for injuries under three causes of action.

The first cause of action is under the Jones Act, 46 U.S.C.A. § 688, and is based upon the alleged negligence of the Company. The second cause of action is for "maintenance and cure" under the ancient rights of seamen falling sick or being injured in the service of their ship. The third cause of action is for damages resulting from "unseaworthiness" under general Maritime Law. The case was tried to the Court without a jury.

The facts show that on December 23, 1952, Benton was the sole employee upon an oil barge owned by the Company, his classification being tankerman or barge man. It was his duty to discharge oil from the barge to certain steamships. This was done by means of a large hose which was held up by lines from a boom. The hose was heavy and ran from pipes on the barge to a riser on the ship. The end of this hose was moved about and connected to the riser by means of lines which came down from the top of the boom. These lines were operated by a winch which was attached to the boom and by which the operator was able to raise and lower the oil hose.

The winch was operated by having a movable handle on either side of the central spool. The hose was held in a stationary position by a dog being put in place on the teeth of the gears, which prevented the gears from moving either way. When it was necessary to move the end of the hose down, the handle was held in place, the dog removed from the gear teeth, and the handle then turned either to raise or lower the line that ran to the end of the hose. By reason of the weight of the hose, when the dog was removed, if the handle was not held in place it would go around in a circle as the weight of the hose caused the line on the winch to go down to the deck of the barge. Benton contended that while he was lowering the hose and releasing the dog to do so, that the handle must have got away from him and rapidly revolved, hitting him in the lip.

Benton contends that the Company was negligent and that the winch was an unseaworthy device in several ways. First, he claims that the dog should have been on a spring so that it would release automatically when the pressure was taken off it by turning the handle. Thus Benton would not have been required to take one hand from the handle. Second, that the winch was on a movable boom rather than on a stationary platform. Third, that the deck under the winch was cluttered with pipes and hoses so that the winch operator could not stand properly to operate the winch. Fourth, that the winch was too high off the deck. Fifth, that Benton was not provided with sufficient help with which to do the work.

■ The Court is unable to find any negligence on the part of respondent, nor is the Court able to find that the vessel, its gear or appliances were unseaworthy.

There was no evidence that the location of the winch on a movable boom caused the accident or that the boom did move at the time thereof. The deck of the barge was equipped with necessary and usual pipes for the transportation of oil. The dog could be removed from the gears and the winch operated by proper handling thereof.

Benton also alleges that he was not provided with sufficient help, but all the testimony was that this and other similar barges were one-man barges and that it was the practice for only one man to operate the barge. The evidence does not show that more than one man was required to safely and properly operate the winch.

■ Under the Jones Act it was incumbent upon the libelant to prove that

the respondent was negligent and that the negligence was the proximate cause of the injuries complained of. DeZon v. American President Lines, 1943, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065; Lake v. Standard Fruit & Steamship Co., 2 Cir., 1950, 185 F.2d 354; Buford v. Cleveland & Buffalo Steamship Co., 7 Cir., 1951, 192 F.2d 196.

■ Under the third cause of action it was incumbent to establish by a preponderance of the evidence that the vessel, its gear or appliances were unseaworthy. The Tawmie, 5 Cir., 1936, 80 F.2d 792. Libelant has failed to establish his case in either particulars.

■ He admitted that he had performed this operation of lowering the hose by use of the winch many, many times without injury. He does contend that he complained to the Company about the location of the winch and there is also testimony that another man was injured by a similar winch in a similar manner previous to the injury to Benton and that the Company had knowledge of such injury, although Company employees deny any such knowledge. However, the mere fact of an injury does not alone establish negligence, the doctrine of res ipsa loquitur not being applicable to this case. Properly operated, the winch was safe and a reasonable device for the operation it was called upon to do. This is demonstrated by the fact that Benton had safely performed the operation many times a day all during the time he worked on this barge, and that others working on the barge had similarly performed this operation many times without accident. The winch may not have been the latest and very safest device available for this type of work. However, that is not the test. All the employer is required to do is to provide a safe place in which to work, and safe and seaworthy appliances with which to do the work. Sanford v. Caswell, 4 Cir., 1953, 200 F.2d 830. The employer is not required to provide an "accident-proof ship," Lake v. Standard Fruit & Steamship Co., 2 Cir., 1950, 185 F.2d 354. Nor is he required to pro-

vide the very latest and safest devices so long as the devices that are provided are reasonably safe and adapted to the uses to which they are to be put. Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834; Jacob v. New York City, 1941, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166; The Tawmie, 5 Cir., 1936, 80 F.2d 792. The Court finds that the winch was a reasonably safe device and that this method of lowering the hose was reasonable, and not dangerous if properly done.

It is admitted that the libelant is entitled to maintenance and cure, and the parties have stipulated that this should be $8 per day. The parties do not agree as to the length of time to which Benton is entitled to maintenance and cure and whether or not the days which he worked should be deducted from the total days allowed. As stated before, the handle hit Benton in the face. It was with sufficient force that he was knocked unconscious for a period of from ten to twenty minutes. Stitches were required to mend the lip and cheek. Injuries were also sustained to Benton's right middle finger. Benton was examined at the Marine Hospital where X-rays were taken which were negative. Several days after the accident he developed headaches, nausea, trouble in focusing his eyes, and dizziness with loss of balance. He was in the hospital under observation from January 8 to January 12, 1953. He returned to work for the defendant on January 25 and worked until February 11. He also worked from March 8 to March 10 when he was discharged. He was again in the hospital, in cervical traction, from April 1 until April 14. Since the accident he has had a nerve block done six times and has lost about 45 pounds (from 220 pounds to 175 pounds). Medical testimony was that Benton has "occipital neuritis" caused by straining of the nerves, and that he might need physiotherapy treatment for about a year.

Benton's prior medical history shows that he was injured some time between 1937 and 1941 in a collision between a motorcycle on which he was riding, and

an auto. He received a concussion and was unconscious for four or five hours, but claims to have suffered no permanent after effects. Benton was given a medical discharge from the Navy in 1944 by reason of arteriosclerosis.

Although he testified that he could not return to the same type of physical work as before the accident, he did take employment as a guard for another employer for about 178 days from May to December of 1953.

Libelant contends he is entitled to medical and hospital expenses incurred since the accident. After the accident and on the same day he received a certificate from his employer entitling him to free hospital service at the Marine Hospital in San Francisco. However, after receiving emergency treatment at the Marine Hospital, he chose not to return there for treatment and later was hospitalized at a private hospital of his choice in Oakland on several occasions.

Whether or not Benton's present physical and mental condition is entirely due to the accident on Barge No. 3, or is an aggravation of a previously existing dormant condition, or both, (pictures taken a few weeks before the accident show Benton to have been in good physical condition, and testimony shows that he had no trouble with hard physical labor prior to this accident), he is entitled to recover his maintenance and cure, The Bouker No. 2, 2 Cir., 1917, 241 F. 831, which may extend beyond the time of the voyage. Calmar S. S. Co. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. The Court finds that a "reasonable time" is from the date of the accident until June 30, 1954. This is a total of 555 days. At $8 per day, the total maintenance is $4,440. Benton has already received maintenance from the respondent for a period of 71 days. He is not entitled to maintenance during the time he was re-employed by respondent (19 days). Nor is he entitled to maintenance from the respondent during the time he was able to maintain himself through other employment (178

days). Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690.

The time while Benton was in the hospital is not deducted, because he was maintaining himself during that time. However, since it appears that Benton could have obtained free hospitalization at the Marine Hospital, he is not entitled to his medical expenses. U. S. v. Loyola, 9 Cir., 1947, 161 F.2d 126; U. S. v. Johnson, 9 Cir., 1947, 160 F.2d 789; Calmar S. S. Co. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993.

From the sum of $4,440 there is therefore deducted the sum of $2,144 (268 days at $8 per day), leaving due to libelant for maintenance and cure the sum of $2,296.

Judgment is in favor of libelant for $2,296, plus costs.

Respondent to prepare judgment.