**LYKES BROS. S. S. CO., Inc.**

v.

**BOUDOIN.**

**BOUDOIN**

v.

**LYKES BROS. S. S. CO., Inc.**
No. 14765.

United States Court of Appeals
Fifth Circuit.
March 26, 1954.

Rehearing Denied May 10, 1954.

Andrew R. Martinez, Wm. E. Wright, New Orleans La., Terriberry, Young,

Rault & Carroll, New Orleans, La., of counsel, for appellant.

Raymond H. Kierr, Samuel C. Gainsburgh, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal by the defendant from a final judgment entered in plaintiff's favor in an action at law brought by a seaman for injuries inflicted upon him by another seaman and tried to the court upon a waiver of jury. The plaintiff also has attempted belatedly to appeal because of inadequacy, but, since plaintiff has been paid the amount of the award for maintenance and cure, and we are holding that no case for damages was made out, it will not be necessary to notice his appeal.

Both of the seamen were unlicensed crew members. Neither had supervisory control over the other, and the assault was unconnected with the business of the ship or the respondent steamship company.

The plaintiff was employed aboard the defendant's SS Mason Lykes in the capacity of oiler during a foreign voyage which commenced from, and ended in, New Orleans, between the dates of September 6, 1949, and December 19, 1949. During the late hours of November 24, 1949 (Thanksgiving night) and early hours of November 25, 1949, three unlicensed crew men, off duty and having no work to perform until the next morning, were in the forecastle of the boatswain talking and having drinks. One of the men was Manuel Gonzales, the assailant involved in this case.

The plaintiff, Elie Boudoin, had been drinking ashore on the afternoon of November 24th, and had gone to bed at about 5:00 P.M. that day. About 2:00 A.M. on the morning of November 25th, while the plaintiff was asleep or almost asleep in his bed, Manuel Gonzales left the boatswain's room and went into the room of the plaintiff and attempted to take a bottle of brandy from under the plaintiff's bed. When the plaintiff was startled in the semi-darkness by the shape and person of Manuel Gonzales close to his bed, he accosted Gonzales, and Gonzales struck him on the back of the head with the bottle which he, Gonzales, had taken from under plaintiff's bed. As a result of the blow on the head, the plaintiff suffered personal injuries for which the lower court awarded damages and maintenance. The maintenance part of the judgment has been paid, and this appeal concerns only the plaintiff's right to recover damages.

The district judge held the shipowner to an absolute warranty of seaworthiness in respect of the disposition of the members of the vessel's crew, which, as applied to assault cases, he declared required that each seaman be "equal in disposition * * * to the ordinary men in the calling". Applying this standard, he held the defendant liable to the plaintiff under the General Admiralty Law because the assailant, Manuel Gonzales, was not, during the voyage in question "equal in disposition * * to the ordinary men in the calling."[1] In addition, he held the officers of the ship negligent in not anticipating that some such trouble as occurred would, or might, occur, and in not preventing it by breaking up the party.

Appealing from the decision and judgment, the respondent is here insisting that in so finding and holding, the district judge erred and his decree based thereon must be reversed.

In opposition to the district judge's conclusion that the presence of Gonzales on board the SS Mason Lykes made it unseaworthy, it vigorously presents these views:

> "By long and well established jurisprudence, a vessel's warranty of seaworthiness, applied to assaults committed by unlicensed crew members, means that the shipowner is liable only if the assailant possessed

<hr>

[1]. Boudoin v. Lykes Bros. S. S. Co., D.C., 112 F.Supp. 177, 180.

vicious proclivities based upon a number of assaults, vicious in nature, and occurring so that the ship's officers knew or should have known the assailant's disposition. In fact, prior to the case of Keen v. Overseas Tankship Corporation, 2 Cir., 194 F.2d 515, 1952 AMC 241, on which the district judge relied, no court had gone to the length of holding a shipowner liable in assault cases involving unlicensed crew members when the assailant did not possess known vicious traits."

Arguing in support of these views, exhaustively reviewing the jurisprudence, and quoting from, and analyzing decisions [2] written before and after the Keen case, it concludes its argument thus:

"These authorities establish clearly that a ship owner is not to be held liable for an assault unless: (1) it is committed by a superior on a subordinate in carrying out the ship's work; or (2) the assailant possessed known vicious characteristics."

Appellant points to the absence from the findings of the essential finding that prior to the assault the shipowners or the officers of the ship knew or had reason to know, that Gonzales had exhibited, or was possessed of, known vicious characteristics and to the complete absence from the record of any evidence which would support such a finding. So pointing, appellant insists that, under the established principles which, upon the authority of the Keen case, were departed

from by the district judge, appellant is not, and cannot be made, liable on the theory advanced below that Gonzales' presence on board rendered the ship unseaworthy.

On the issue of negligence on the part of the ship's officers in not putting an end to the drinking on the night of the assault, on which issue the district judge, citing Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490, and Jensen v. U. S., 3 Cir., 184 F.2d 72, also found for plaintiff, appellant concedes that it is the duty of officers to suppress disorders and conduct which they know or ought to know of, which may be reasonably expected to result in injury to crew members. It insists, though, that the record affords no basis for the finding that within the principle for which these cases stand, the ship's officers knew or should reasonably have anticipated that an incident of the kind and with the consequences shown here would be likely to occur, and that the failure to prevent it was actionable negligence.

Recognizing that the district judge has found, in Finding No. 19, that Gonzales was a person of dangerous propensities and proclivities, during the time he was employed aboard the SS Mason Lykes, and in Finding No. 20, that he was a person of violent character, belligerent disposition, excessive drinking habits, and disposed to fighting and making threats and assaults, it vigorously asserts that the record does not furnish support for this finding, except as it is based upon the assault in this case.[3]

2. The Rolph, 9 Cir., 299 F. 52; Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132; Lykes Bros. Steamship Co., Inc. v. Grubaugh, 5 Cir., 128 F.2d 387; Brailas v. Shephard Steamship Co., 2 Cir., 152 F. 2d 849; Kable v. U. S., 2 Cir., 169 F.2d 90; Yukes v. Globe Steamship Corp., 6 Cir., 107 F.2d 888; The Law of Seamen, Norris, Vol. 2 (1952); The E. B. Ward, Jr., C.C., 20 F. 702; Hurley v. The Lizzie Frank, D.C., 31 F. 477; Cf. Jones v. Lykes Bros., 2 Cir., 204 F.2d 815.

3. In support, it points to the record, Tr. p. 277, 325, 362 and 363, showing that,

excluding the instant case, he was never guilty of an assault aboard the Mason Lykes or any other vessel and that he was on the Mason Lykes several months before the involved incident. He has never been charged or investigated by the United States Coast Guard for misconduct, assaults, or fights. (Tr. 390) He has been in good standing with the Coast Guard since he entered the marine service in 1946. He has been, and is, in good standing with the National Maritime Union. (Tr. 233) He has been going to sea since the incident, a part of that time on ships of the defendant. While it is true

It further insists that, assuming that the hearsay evidence of the plaintiff, as to Gonzales' propensity for fighting, is sufficient to show that the plaintiff believed that he had that propensity, there is no evidence to show that the officers knew that he had it, and none to show that they knew, or ought to have known, that it was probable or likely that he would leave his companions in the boatswain's quarters to assault the plaintiff in this case or any other seaman.

We find ourselves in complete agreement with the appellant that the Keen case, in undertaking to set up a standard of seaworthiness to which the dispositions of all seamen must equally conform, is a departure from the long settled law governing responsibility for injuries intentionally inflicted by one seaman upon another, as settled in The Rolph, 9 Cir., 299 F. 52, and in the other cases relied on by appellant. Indeed, the opinion in the Keen case admits that this is so.

It justifies the departure by creating a standard [4] of admeasurement for seamen which, until our brothers confected it, was, we think, never before heard of in fact or in fiction on sea or on land, nor thereafter adhered to. Indeed, the standard is so lacking in definiteness and objectivity as not only to lead astray hapless district judges who endeavor to apply it,[5] but to put its creators themselves hard to it to square their varying verdicts that Keen, 194 F.2d 515, supra, was not, and Jones [6] was, "equal"

in disposition, as the standard purports to require.

■ All of us are more or less different in disposition, even those of us who live in old and settled communities in which the inhabitants tend to conformity and a settled norm, and are engaged in occupations conducive to such tendencies. We take judicial notice of the fact, which all men know, that seamen, drawn as they have been and are from the four quarters of the earth and the seven seas, differ from each other in finger prints and even more than men in other callings do, in disposition. They are not cut out of, they do not tend to conform to, a single or uniform pattern of disposition or behavior. Our brothers, in their opinion in the Jones case, admit this to be so when they say:

"Sailors lead a rough life and are more apt to use their fists than office employees; what will seem to sedentary and protected persons an insufficient provocation for a personal encounter, is not the measure of the 'disposition' of 'the ordinary man in the calling.'" 204 F.2d at page 817.

■ It is, therefore, quite clear that the proposed standard presents no reliable or workable measure for determining whether the mere presence on board of a particular seaman is a breach of the assumed warranty. If any meaning of a definite measure can be adduced for it, this is not because in itself the standard conveys the meaning but because its use by its sponsors in the two

that the plaintiff did testify that Gonzales had a bad reputation for fighting, there is no testimony that the officers ever knew or heard of this reputation, and the uncontradicted testimony of the master (Tr. 324) is that he fired Gonzales because "I don't want anyone about my ship that fights over the first time. One fight and you are gone, that goes for anyone, not only that man but anybody that does it is finished." Further, while the plaintiff testified that Gonzales was in trouble with the Coast Guard, the record shows that this was not on account of fighting or ill temper but on account of being absent from duty.

4. This standard as our brothers have confected it and laid it down is: "Applied to a seaman such a warranty (of seaworthiness) is not that the seaman is competent to meet all contingencies but that he is equal in disposition and seamanship to the ordinary man in the calling."

5. Jones v. Lykes Bros., D.C., 108 F.Supp. 323; Boudoin v. Lykes Bros., 112 F. Supp. 177.

6. Lykes Bros. v. Jones, 2 Cir., 204 F.2d 815, reversing Jones v. Lykes Bros., supra.

cases mentioning it and the different results of its application by them point the way. Thus we learn that a seaman who uses a meat cleaver in a fight with another seaman *is not equal* in disposition to an ordinary seaman, while one who strikes another down and thereafter brutally beats, pounds, and otherwise commits mayhem on him while he is helpless and at the mercy of his assailant *is*. Observation and experience combine to teach, we think, that such reasoning is not standard but personal to the reasoner. We, therefore, decline to accept the so-called standard laid down in the Keen case or to approve the action of the court below in attempting to apply it here.

We might say in passing, though, that since the assailant in this case did not use a meat cleaver but a bottle, and since he did not, as the assailant did in Jones v. Lykes, supra, commit mayhem on the plaintiff while he was down and out, we do not believe that the district judge would have thought this was a case for the application in favor of the victim of the equal disposition standard if he had known that its creators would refuse to apply it in favor of the victim in the Jones case.

 We find ourselves in agreement, too, with appellant that upon the question of negligence, the decision below was wrong. Search the record as one will, there is no substantial evidence upon which to rest a finding that any of the officers knew, or should have known, that anyone on board the ship was liable to be injured as a result of the drinking going on in the boatswain's room. Particularly there was none to support a finding that any of them knew, or should have anticipated, that Gonzales would attack and injure a fellow crewman. There is no evidence that anything was done at, or in connection with, the party which should have warned the watch officer, or caused him to apprehend, that mischief of the kind testified to here was, or was likely to be, afoot. Even the plaintiff who stopped by and looked in the room about 1:30 A.M., testified that one had to pass in its immediate vicinity to hear the man talking.

What has occurred here is that clear and certain hindsight has intruded into and usurped the place of reasonable foresight, and a finding has been made and a judgment entered against respondent on the basis of it. This appears particularly clear when the precise nature of the occurrence is examined. This was not an ordinary drunken fight, the end or consummation of a wordy brawl. It was the result of the entirely unforeseen and unforeseeable acts of Gonzales (1) in slipping into plaintiff's room for the purpose of purloining from him a bottle of brandy and (2), when challenged and seized by the plaintiff, in seeking, by striking plaintiff with the bottle, to make good his escape and cover his actions.

The finding of negligence is, in our opinion, clearly erroneous and may not stand. The judgment appealed from is reversed and here rendered for appellant.