Eldred A. REYNOLDS, Plaintiff,

v.

ROYAL MAIL LINES, Ltd., a corporation, Defendant.

ROYAL MAIL LINES, Ltd., a corporation, Third-Party Plaintiff,

v.

ASSOCIATED BANNING COMPANY, a corporation, Third-Party Defendant.

No. 17884.

United States District Court
S. D. California, Central Division.
Dec. 20, 1956.

Ben Margolis, Los Angeles, Cal., for plaintiff.

Lillick, Geary, McHose, Roethke & Myers, and Gordon K. Wright, Los Angeles, Cal., for defendant.

Robert Sikes, Los Angeles, Cal., for third-party defendant.

MATHES, District Judge.

Invoking the jurisdiction of this court upon the ground of diversity of citizenship, 28 U.S.C. § 1332, plaintiff has filed a complaint on the "law side" seeking damages for personal injuries alleged to have been sustained while he was working as a longshoreman aboard the SS "Loch Gowan", then moored at dock in the navigable waters of Los Angeles Harbor.

In one cause of action it is asserted that plaintiff's injuries and consequent damages were a proximate result of a breach by the defendant shipowner, Royal Mail Lines, Ltd., of its implied warranty under maritime law of the seaworthiness of the SS "Loch Gowan".

In the other cause of action it is asserted that plaintiff's injuries and consequent damages were a proximate result of a breach by the defendant shipowner of its duty of ordinary care under the circumstances; and it is alleged that by reason of the same conditions claimed to render the vessel unseaworthy, the shipowner was negligent in failing to maintain the vessel "and its equipment, gear and appliances in a safe * * * condition * * *."

The shipowner has filed a third-party complaint for indemnification against plaintiff's stevedoring employer, Associated Banning Company, Fed.Rules Civ. Proc. 14, 28 U.S.C., and the latter has replied with a counterclaim.

It is a story often told that the warranty of seaworthiness is implied by maritime law from the relationship of the parties; originally between shipowner and shipper, The Southwark, 1903, 191 U.S. 1, 9, 24 S.Ct. 1, 48 L.Ed. 65; The Silvia, 1898, 171 U.S. 462, 464, 19 S.Ct. 7, 43 L.Ed. 241; then between ship-

owner and seaman, The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; and later between shipowner and longshoreman. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; cf.: Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Berryhill v. Pac. Far East Line, 9 Cir., 1956, 138 F.2d 859; Dixon v. United States, 2 Cir., 1955, 219 F.2d 10.

Not only is the claimed breach of the warranty of seaworthiness "of admiralty cognizance", but also the actionable negligence here alleged is a maritime tort, having occurred in navigable waters. Gonsalves v. Morse Dry Dock & Repair Co., 1924, 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228; Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208; The Plymouth, 1865, 3 Wall. 20, 36, 70 U.S. 20, 18 L.Ed. 125; United States v. Matson Nav. Co., 9 Cir., 1953, 201 F.2d 610.

Nonetheless, plaintiff did not choose to invoke the admiralty jurisdiction of this court. 28 U.S.C. § 1333. Nor did he attempt to invoke jurisdiction under 28 U.S.C. § 1331, by claiming that the causes asserted under maritime law present a case which "arises under the Constitution, laws or treaties of the United States." Cf.: Paduano v. Yamashita K.K.K., 2 Cir., 1955, 221 F.2d 615, affirming D.C.E.D.N.Y.1954, 120 F.Supp. 304; Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834, 839–842; Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662.

Instead, plaintiff declared under the diversity jurisdiction of this court, which normally is only invoked to assert claims arising under state law. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Yet he does not rely upon state law, but upon the maritime law; and it hardly need be added that "the party who brings a suit is master to decide what law he will rely upon * * *." The Fair v. Kohler Die & Specialty Co., 1913, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716.

Although presenting claims under the maritime law for adjudication in this court, plaintiff asserts the right under the "saving to suitors clause" of 28 U.S. C. § 1333(1) to have his case tried on the "law side", rather than in admiralty. That the "saving to suitors clause" can be thus used is but another of the many anomalies of federal diversity jurisdiction. See: Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at pages 409, 411, 419, 74 S.Ct. at pages 204, 206, 210; Caldarola v. Eckert, 1947, 332 U.S. 155, 157, 67 S.Ct. 1569, 91 L.Ed. 1968; Williams v. Tide Water Associated Oil Co., 9 Cir., 1955, 227 F.2d 791, certiorari denied, 1956, 350 U.S. 960, 76 S.Ct. 348.

The probability is that the common-law remedy of trial by jury would have been available to plaintiff in the California courts on both causes of action. See Intagliata v. Shipowners & Merchants Towboat Co., 1945, 26 Cal.2d 365, 159 P.2d 1. And it is held that where as here federal jurisdiction is based solely upon the ground of diversity of citizenship, this court is "in effect, only another court of the State." Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079.

When a seaman sues under the Jones Act in a state court, concurrent jurisdiction is expressly granted to enforce this statutory addition to the maritime law. See: 46 U.S.C.A. § 688, 45 U.S.C.A. § 56; Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 243, 63 S.Ct. 246, 87 L.Ed. 239; Engel v. Davenport, 1926, 271 U.S. 33, 37–38, 46 S.Ct. 410, 70 L.Ed. 813; Panama R. Co. v. Vasquez, 1926, 271 U.S. 557, 560–562, 46 S.Ct. 596, 70 L.Ed. 1085; Second Employers' Liability Cases, Mondou v. New York, N. H. & H. R. Co., 1912, 223 U.S. 1, 55–59, 32 S.Ct. 169, 56 L.Ed. 327. As pointed out in Panama R. Co. v. Johnson, 1924, 264 U.S. 375, 388–389, 44 S.Ct. 391, 394, 68 L.Ed. 748, the election which the Jones Act provides for a seaman "is between alternatives accorded by the maritime law as modified [by that statute], and not between that law and some nonmaritime system." See: Pacific S. S. Co. v. Peterson, 1928, 278 U.S. 130, 134, 138, 49 S.

Ct. 75, 73 L.Ed. 220; Williams v. Tide Water Associated Oil Co., supra, 227 F. 2d at page 794.

■ But where, as here, a longshoreman or a seaman or other suitor seeks recovery in any court other than a court of admiralty on a claim cognizable under general maritime law, he necessarily relies upon the "saving to suitors clause." 28 U.S.C. § 1333(1). And as the Court observed with respect to the "saving to suitors clause" in Caldarola v. Eckert, supra, 332 U.S. at pages 157–158, 67 S.Ct. at page 1570: "Whether Congress thereby recognized that there were common law rights in the States as to matters also cognizable in admiralty, or whether it was concerned only with 'saving' to the States the power to use their courts to vindicate rights deriving from the maritime law to the extent that their common law remedies may be available, is a question on which the authorities do not speak with clarity. Compare Waring v. Clarke, 5 How. 441, 460, 461, 12 L.Ed. 226; Taylor v. Carryl, 20 How. 583, 598–599, 15 L.Ed. 1028 * * * with Schoonmaker v. Gilmore, 102 U.S. 118, 26 L.Ed. 95; The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264; Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; C. J. Hendry Co. v. Moore, 318 U.S. 133, 63 S.Ct. 499, 87 L.Ed. 663; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 88, 89, 66 S.Ct. 872, 874, 90 L.Ed. 1099."

Some study of the decisions since original enactment of the "saving to suitors clause" in § 9 of the Judiciary Act of 1789, 1 Stat. 76–77, reveals that the observation just quoted should rank high in judicial understatement. The coming of the Jones Act in 1920, 41 Stat. 1007, did not contribute to clarification, and Erie R. Co. v. Tompkins, supra, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 has served to accent the problem. See: Stevens, Erie R. R. v. Tompkins and The Uniform General Maritime Law, 64 Harv. L.Rev. 246 (1950); Palfrey, The Common Law Courts And The Law of The Sea, 36 Harv.L.Rev. 777 (1923).

■ The rationale of current authority appears to be that whenever a suitor on a claim of admiralty cognizance is accorded any remedy at all in a state court, the "supremacy clause", U.S.Const. Art. VI, cl. 2, serves to prevent state remedy from "diluting" or diminishing a right, or adding to a liability, which would exist under maritime law if enforced in a court of admiralty. Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at pages 409–410, 74 S.Ct. at page 204; Garrett v. Moore-McCormack Co., supra, 317 U.S. at page 243, 63 S.Ct. 246; Carlisle Packing Co. v. Sandanger, 1922, 259 U.S. 255, 259, 42 S.Ct. 475, 66 L.Ed. 927; Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 240–242, 42 S.Ct. 89, 66 L.Ed. 210; cf: Madruga v. Superior Court, 1954, 346 U.S. 556, 560–561, 74 S.Ct. 298, 98 L.Ed. 290; Caldarola v. Eckert, supra, 322 U.S. at pages 158, 163–165, 67 S.Ct. 1569; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 160–161, 166–169, 40 S.Ct. 438, 64 L.Ed. 834; Knapp, Stout & Co. Company v. McCaffrey, 1900, 177 U.S. 638, 648, 20 S. Ct. 824, 44 L.Ed. 921; The Moses Taylor, 1866, 4 Wall. 411, 431, 71 U.S. 411, 18 L.Ed. 397.

In any event it seems likely that the California courts would adopt and apply rules of the maritime law as the law of the State, Uravic v. F. Jarka Co., 1931, 282 U.S. 234, 240, 51 S.Ct. 111, 75 L.Ed. 312, in cases where the maritime law would be applicable if the admiralty jurisdiction of this court had been invoked. See: Intagliata v. Shipowners & Merchants Towboat Co., supra, 159 P.2d at pages 5–7; Occidental Indemnity Co. v. Industrial Acc. Comm., 1944, 24 Cal.2d 310, 149 P.2d 841.

Recognizing the inherent difficulties attendant upon asking a jury to determine issues as to liability for unseaworthiness as well as negligence in a single case—and a fortiori where both are claimed to arise from the same conduct, the parties at bar stipulated to waive jury trial of the claim based upon the warranty of seaworthiness.

A jury trial was had of the issue of negligence, and the jury returned a verdict in favor of the defendant shipowner. A motion for a new trial is pending, but counsel have stipulated that ruling on the motion be deferred until after decision on the unseaworthiness claim.

■ The jury's verdict on the issue of negligence cannot properly guide the court in finding on the issue of unseaworthiness, for much more may well be required to serve as proof of the former than of the latter. See: Seas Shipping Co. v. Sieracki, supra, 328 U.S. at pages 85, 87, 66 S.Ct. 872, 90 L.Ed. 1099, affirming, 3 Cir., 1945, 149 F.2d 98, 101; McCarthy v. American Eastern Corp., 3 Cir., 1949, 175 F.2d 724; German v. Carnegie-Illinois Steel Corp., 3 Cir., 1946, 156 F.2d 977, 979; cf: Baltimore S. S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069.

■ Fault is an ingredient of liability for negligence; the proof must show a careless breach of duty owed to use ordinary care under the circumstances. Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 525, 76 S.Ct. 608; Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at page 406, 74 S.Ct. 202; States S.S. Co. v. Rothschild International Stev. Co., 9 Cir., 1953, 205 F.2d 253, 256; Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352, 353.

Fault is not however an ingredient of liability for breach of the shipowner's implied warranty of seaworthiness. This warranty is "essentially a species of liability without fault; analogous to other well known instances in our law." Seas Shipping Co. v. Sieracki, supra, 328 U.S. at page 94, 66 S.Ct. at page 877; Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 100, 64 S.Ct. 455, 88 L.Ed. 561.

As Judge Wright aptly put it in Boudoin v. Lykes Bros. S.S. Co.: "The warranty of seaworthiness is a kind of liability without fault in which knowledge of the circumstances creating the unseaworthiness is immaterial." D.C.E.D.La. 1953, 112 F.Supp. 177, 180, reversed 5 Cir., 1954, 211 F.2d 618, reversed 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354.

■ Thus liability for all damages proximately resulting from any breach of the implied warranty of seaworthiness is imposed by law upon the shipowner, regardless of whether or not the unseaworthy condition aboard the vessel, or indeed the vessel itself, happens to be within the owner's control, Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478, affirmed, per curiam, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Grille v. United States, 2 Cir., 1956, 232 F.2d 919, 922; Rogers v. U. S. Lines, 3 Cir., 1953, 205 F.2d 57, reversed 1954, 347 U.S. 984, 74 S.Ct. 849, 98 S.Ct. 1120; and regardless of whether or not the defect was known, or in the exercise of due care could have been known to the shipowner. Boudoin v. Lykes Bros. S.S. Co., supra, 348 U.S. at page 339, 75 S.Ct. 382; The Edwin I. Morrison, 1894, 153 U.S. 199, 210, 14 S.Ct. 823, 38 L.Ed. 688; Lahde v. Society Armadora Del Norte, 9 Cir., 1955, 220 F.2d 357, 360.

■ But the content of the warranty is not that the ship or gear or equipment is absolutely seaworthy and safe in all events, but only reasonably so, and that only when employed or used for some purpose for which intended. Boudoin v. Lykes Bros. S.S. Co., supra, 348 U.S. at page 339, 75 S.Ct. 382; Mahnich v. Southern S.S. Co., supra, 321 U.S. at page 103, 64 S.Ct. 455; Nunes v. Farrell Lines, Inc., 1 Cir., 1956, 227 F.2d 619, 622; Poignant v. United States, 2 Cir., 1955, 225 F.2d 595, 598; Manhat v. United States, 2 Cir., 1955, 220 F.2d 143, 149; Freitas v. Pacific-Atlantic S.S. Co., 9 Cir., 1955, 218 F.2d 562; Fireman's Fund Indemnity Co. v. United States, 5 Cir., 1954, 211 F.2d 773, 776; Benton v. United Towing Co., D.C.N.D.Cal.1954, 120 F.Supp. 638, 640.

■ Plaintiff at bar alleges in detail that: "The unsafe, improper and unseaworthy condition of the vessel and of its equipment, gear and appliances consisted, among other things, of the following: a wooden platform was left standing on its side and was standing on its side leaning against the bulkhead near the No. 3 hatch of said vessel unsecured except

by a single and inadequate rope tied at one upper corner of the platform and running to the said No. 3 hatch extending over an area where longshoremen were required to be in order to perform their work, and with no second rope at all to hold the other portion of said platform in place; on said date and by reason of the unseaworthy condition of the vessel as aforesaid, said platform fell over and struck plaintiff on the head and shoulder and knocked him down against the bulkhead causing him to strike his back against a protruding bolt with great force and plaintiff thereby suffered severe personal injuries as hereinafter more specifically set forth."

The burden of proof on the issues of fact thus tendered is upon plaintiff to establish, by a preponderance of the evidence, that a breach of the shipowner's implied warranty of seaworthiness was a proximate cause of the injuries. Freitas v. Pacific-Atlantic S.S. Co., supra, 218 F.2d at page 564; Fireman's Fund Ind. Co. v. United States, supra, 211 F.2d at page 776; Grillo v. United States, 2 Cir., 1949, 177 F.2d 904, 905.

The up-ended platform of which plaintiff complains is called by seagoing men an "O'Brien"; and it is conceded that the intended use of such a platform is to protect the deck surface during loading and unloading operations.

Moreover the evidence establishes that the up-ended "O'Brien" was not being used for the purpose for which intended, but was being employed by the longshoremen as a make-shift windbreak. Cf. Connolly v. Weyerhaeuser S.S. Co., 2 Cir., 1956, 236 F.2d 848.

The evidence also establishes that the "O'Brien" was seaworthy—reasonably safe and fit—for the purpose for which intended, namely, to serve as temporary-cover protection for the surface of the deck.

The unseaworthiness claimed then is not in the condition of the "O'Brien" as such, but in the condition of the deck which was created by the longshoremen's misuse of the up-ended "O'Brien" as a windbreak, and by the protruding bolt

from the bulkhead. Cf. Grillea v. United States, supra, 232 F.2d at pages 922-923.

As to the bolt, the evidence fails to establish that plaintiff came into contact with it, so even if it be assumed that its presence created an unseaworthy condition, there appears no causal connection between the bolt and plaintiff's injuries. Cf. Peterson v. United States, 9 Cir., 1955, 224 F.2d 748, 751.

As to the upended "OBrien", the evidence fails to establish that its misuse by the longshoremen rendered the deck unseaworthy. To the contrary, it appears that the deck, even with the upended "O'Brien" thereon, was reasonably safe for purposes intended; and that is all the warranty of seaworthiness assures.

The deck was well lighted. Cf.: Pacific Far East Lines v. Williams, 9 Cir., 1956, 234 F.2d 378, certiorari denied 352 U.S. 871, 77 S.Ct. 96; Lahde v. Society Armadora Del Norte, supra, 220 F.2d at page 358. The "O'Brien" did not fall until after plaintiff himself, or one end of a "strong back" he was helping to carry, collided with either or both the "O'Brien" and the rope securing it. And though he denied it, the circumstantial evidence is convincing that plaintiff was aware of the presence of the upended "O'Brien".

Since plaintiff's motion for a new trial of the issue of negligence is still pending and that issue thus remains in fieri, it would not be appropriate for the court now to make any finding as to the proximate cause of plaintiff's injuries and consequent damage, other than that they were not proximately caused by any breach of the shipowner's implied warranty of seaworthiness. Luckenbach v. W. J. McCahan Sugar Refining Co., 1918, 248 U.S. 139, 145, 39 S.Ct. 53, 63 L.Ed. 170; cf: Nunes v. Farrell Lines, supra, 227 F.2d at page 621; Firemen's Fund Indemnity Co. v. United States, supra, 211 F.2d at page 777; Edwards v. Steinns, 4 Cir., 1953, 207 F.2d 734, 736; Benton v. United Towing Co., supra, 120 F.Supp. at page 640.

This conclusion makes it unnecessary to consider at this time the claims to indemnification. See: Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; American President Lines v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753; Palazzolo v. Pan-Atlantic S. S. Corp., 2 Cir., 1954, 211 F.2d 277, affirmed, 1955, 349 U.S. 901, 75 S.Ct. 575, 99 L.Ed. 1239; Brown v. American-Hawaiian S.S. Co., 3 Cir., 1954, 211 F.2d 16; United States v. Rothschild Int. Stev. Co., 9 Cir., 1950, 183 F.2d 181.

Attorneys for defendant will lodge with the Clerk within ten days appropriate findings of fact and conclusions of law, to be settled pursuant to local rule 7.