### Fred MOOMEY
v.
### LITTLE BOY, INC.
### Civ. No. 69–C–70.

United States District Court,
S. D. Texas,
Corpus Christi Division.
July 24, 1970.

James T. Smith, Corpus Christi, Tex., for plaintiff.

R. W. Woolsey, Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SEALS, District Judge.

The plaintiff, a merchant seaman, brought this action under the Jones Act to recover damages resulting in physical injuries which he sustained while in the service of the fishing vessel, the LITTLE BOY, on or about August 6, 1967. The plaintiff alleges that his injuries were caused by the negligence of the defendant, Little Boy, Inc. and/or by the unseaworthiness of the vessel, the LITTLE BOY.

The court has full and complete jurisdiction over the parties and the issues presented.

By agreement of the parties and the court, the liability and damage issues were severed. The case, thus far, has been tried solely on the issues of whether or not plaintiff could establish by a preponderance of credible evidence that the defendant, acting by and through its agents, servants or employees, was negligent, or that the LITTLE BOY was unseaworthy and that such negligence or unseaworthiness proximately caused or contributed to cause any injury to plaintiff. Also included within the issues to be tried separately from the damage issues were whether the plaintiff was negligent at the time in question and what causal relationship existed between such negligence, if any, and his injuries, if any.

On the night of the occurrence made the basis of this suit, August 6, 1967, the LITTLE BOY, a double-rigged trawler, was dragging for shrimp in the Gulf of Mexico offshore from Aransas Pass, Texas. The three-man crew was comprised of a captain (or master) and two rigmen, Mr. Castleberry and the plaintiff, Fred Moomey. At the moment of the occurrence about which plaintiff complains, the captain was in the wheelhouse and the two rigmen were bringing in the vessel's nets. The nets were connected to the vessel by steel cables running from the bridle attachments to the door of the nets up to the outriggers and down to the winding drums of the winch. Mr. Castleberry was operating the winch for the starboard net and the plaintiff was operating the winch for the port net.

Apparently this operation of bringing in a net with these winches is a fairly simple operation as long as only the single cable is being wound about the winding drum of the winch. But the cable may tend to lump or bunch due to the presence of burs or other imperfections on the cable. As the bridle cables start to come in and began to wind around the drum, this bunching and lumping also tends to occur due to the presence of shackles and thimbles spliced on the end of the bridle. Therefore, unless the bridle cables are kept close together they can be wound about the drum in places with differing circumferences. Thus, one bridle cable may be brought in quicker and if so, this will cause the doors of the net to be brought out of the water unevenly. The plaintiff testified that if the inside door comes in too late, it may still be in the water when the cable is fully wound and, if so, the crew cannot pick up the net. Thus, the winch operator must try to avoid the lumping and must keep the bridle cables close together. Rigmen often do this by hand.

Mr. Moomey testified that on the evening in question he was unable to prevent the cables from building up on the drum unevenly as the winch brought them in and he was unable to keep the bridle cables close together. He testified that it was not burs on the cable but the shackles and thimbles of the bridle that were causing the serious lumping. As the bridle cables began to drift apart while they were being wound onto the drum, the plaintiff testified that he kicked one of the cables with his right foot in an attempt to correct the situation. His foot slipped and was caught between the cable and the drum, and he

thereby incurred the injuries which are made the basis of this suit.

The case on liability was tried on the basis of the pretrial order wherein the plaintiff set forth the following claimed grounds of negligence and of unseaworthiness which plaintiff asserts caused the accident:

(1) The defendant negligently failed to provide him with a safe place in which to work;

(2) The defendant negligently failed to maintain sufficient and competent personnel and employees aboard the vessel;

(3) The defendant negligently failed to provide guides for the winch cables of the vessel;

(4) The master of the vessel negligently failed to properly supervise and direct the operation being undertaken at the time the plaintiff was injured;

(5) The master negligently failed to take the necessary action in time to prevent further injury to plaintiff;

(6) The vessel was unseaworthy because no guides were provided by defendant that would direct the cable to return in a safe and proper manner; and

(7) The vessel was unseaworthy because the defendant failed to provide competent personnel aboard the vessel to properly maintain it in a seaworthy condition. The defendant, in the pretrial order, denied any such elements, or any other such elements, of negligence on its part or unseaworthiness of the LITTLE BOY. To the contrary, defendant asserted that any injuries plaintiff incurred were caused by his own negligence.

At the conclusion of the plaintiff's evidence at the trial on the issues of liability the defendant moved for judgment, arguing that plaintiff had failed to carry his burden of proving facts sufficient to establish any of the claimed grounds of negligence or unseaworthiness. The court granted defendant's motion as to three of the plaintiff's

claimed grounds of recovery, finding as follows:

(1) The defendant did not fail to maintain sufficient and competent personnel and employees aboard the vessel. Plaintiff's evidence did not show that the three-man crew was in any way insufficient or incompetent. After defendant's evidence was introduced, the court was convinced more than ever that the evidence overwhelmingly showed the crew to be sufficient and competent.

(2) The master of the defendant did not fail to properly supervise and direct the operation being undertaken at the time the plaintiff was injured. The plaintiff's evidence showed the plaintiff was well qualified to operate, and was very experienced in operating, winches of the type involved and in performing the duties in which he was involved at the time of the accident. The plaintiff's evidence also showed affirmatively that one man could adequately perform the winch operation alone and that a person of plaintiff's experience and competence needed no supervision in this, or, at least, no more than the master was giving plaintiff. The court found, under the circumstances, that the master's supervision was reasonable. The defendant's evidence further substantiated these findings.

(3) The defendant did not fail to provide competent personnel aboard the vessel to properly maintain it in a seaworthy condition. As stated in (1) above, the plaintiff's evidence did not show the crew to be incompetent. In fact the plaintiff's evidence showed affirmatively that the crew was quite competent to properly maintain the vessel in a seaworthy condition. Defendant's evidence further substantiates this finding.

Thus, the issues remaining are: (1) whether defendant was negligent in failing to provide plaintiff with a safe place to work; (2) whether defendant was negligent in failing to provide guides for the winch cables of the LITTLE BOY; (3) whether the vessel was rendered unseaworthy because defendant

did not equip it with guides that would direct the cable to return in a safe and proper manner; (4) whether the master, as agent of defendant, was negligent in failing to take necessary action in time to prevent further injury to plaintiff.

The testimony of the plaintiff established that the first and second issues stated in the previous paragraph are actually the same, that is, plaintiff's allegation of negligence with respect to defendant's providing a safe place to work relates solely to whether defendant was negligent in failing to provide guides for the winch cables of the LITTLE BOY. The plaintiff testified that the absence of the cable guides was his sole basis of complaint about the vessel.

As to the first of the remaining issues in this case, the court finds that the defendant was not negligent in failing to equip the LITTLE BOY with cable guides on or before August 6, 1967, the date of plaintiff's accident.

The plaintiff testified that in his 14 years of experience as a fisherman he had never worked upon a vessel equipped with such cable guides, and that he knew of only one vessel that was so equipped prior to August 6, 1967. Fred Moomey stated that he could not estimate how many or what percentage of the vessels in the Aransas Pass area were so equipped. He candidly stated that cable guides were relatively new, uncommon and unproven devices at that time. The plaintiff also testified that he had worked on the LITTLE BOY for several days, putting out and bringing in the nets with little difficulty and that he had never complained to Captain Chaeney about the absence of the guides or requested that the vessel be so equipped. He also testified that in all the years he had been working on such fishing vessels, none of which had the guides, he had never been injured by a winch in putting out or bringing in the nets. The plaintiff admitted that kicking the cable was a hazardous means to guide the cables. If the doors were to come up too unevenly, Mr. Moomey stated it would not take too long to let out the cable and realign it. He had only found it necessary to do so but a few times in his 14 years of experience.

Although he estimated that approximately 60% of the shrimp vessels now have such cable guides, defendant's witness James B. Johnson, manager of defendant, stated that these guides were rare in August of 1967 and were just beginning to come into use. He testified that cable guides had not been requested by crewmembers of any of his vessels prior to Moomey's accident. He also testified that the LITTLE BOY was surveyed prior to the time it was purchased in July, 1967 and no safety requirements were made by the surveyor concerning such cable guides. Finally, Johnson testified that cable guides are not a stock item with suppliers, but have to be ordered for later delivery.

Captain Cheaney, a fisherman 25 years, testified that he knew of only one vessel out of approximately 200, that was equipped with cable guides in August of 1967. He also stated that the guides do not make such accidents impossible. He testified that although he had never in 25 years had to put the nets back out because the doors had come up too unevenly as a result of the bridle lines separating, it would take only about 15 minutes to do so and this amount of time would not be critical.

Mr. A. B. Silchenstedt, a designer for Rockport Yacht and Supply Co., a major builder of shrimp trawlers, testified that he believed a shrimper is properly and sufficiently equipped without cable guides. He stated that purchasers of vessels from his company have not asked for the installation of these guides. Thus, the court doubts that it would amount to negligence for an owner of a trawler to fail to install such devices even today.

The case authorities support the court's finding. See *e.g.*, Sams v. Haines, 299 F.Supp. 746 (S.D.Ga.1959); Draddy v. Weston Trawling Co., 344 F. 2d 945 (2d Cir. 1965); and Benton v.

United Towing Co., 120 F.Supp. 638 (N.D.Cal.1954).

The court further finds that the plaintiff has not shown by a preponderance of the evidence that the LITTLE BOY was rendered unseaworthy, by reason of defendant's not having the vessel equipped with cable guides on or before August of 1967.

■■ The doctrine of seaworthiness imposes upon a shipowner the absolute, continuing, and nondelegable duty [Mitchell v. Trawler Racer, Inc., 362 U. S. 539, 548–550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)] to provide his seamen with a vessel equipment which is reasonably fit for their intended use. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955); see Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). True, the duty is absolute, but the standard used to measure that duty is one of *reasonableness*, and *not perfection*. Mitchell v. Trawler Racer, Inc., *supra*, 362 U.S. at 550, 80 S.Ct. 926. Nor is the owner required to furnish the very latest, best or most modern equipment. In Benton v. United Towing Co., 120 F. Supp. 638 (N.D.Cal.1954), plaintiff was injured by a winch crank handle, the California district court succinctly reasoned as follows:

The winch may not have been the latest and very safest device available for this type of work. However, that is not the test. All the employer is required to do is to provide a safe place in which to work, and safe and seaworthy appliances with which to do the work. Sanford v. Caswell, (5 Cir.) 200 F.2d 830. The employer is not required to provide an "accident-proof ship", Lake v. Standard Fruit & S/S Co. (2 Cir.), 185 F.2d 354. Nor is he required to provide the very latest and safest devices so long as the devices that are provided are reasonably safe and adapted to the uses to which they are to be put. Doucette v. Vincent (1 Cir.) 194 F.2d 834; Jacob v. New York City (1941) 315 U.S. 752, 62 S.

Ct. 854, 86 L.Ed. 1166; The Tawmie (5 Cir.), 80 F.2d 792.

The court is satisfied that the evidence in this case shows that under the applicable tests of seaworthiness, the LITTLE BOY was in fact seaworthy without the cable guides. The winches and rigging devices of the LITTLE BOY were reasonably fit, safe and adopted for their intended use of letting-out and bringing-in the vessel's nets.

The plaintiff, Fred Moomey, testified that since about the mid-50's he worked on boats rigged without cable guides and had never been injured by the winch; that he had been performing the operation satisfactorily on vessels without cable guides for about 14 years; and during the time he was employed aboard the LITTLE BOY he had put-out and brought-in the vessel's cables without difficulty. The important difference at the time of his injury was that he attempted to guide the cable by kicking it, a practice he admitted was very dangerous and knew was a very unsafe practice.

Captain Chaeney testified that, from his long experience in this business, he knew of no reason for a man to be injured in the operation of such a winch if he knew what he was doing and was reasonably careful. He also stated that plaintiff should not have kicked the cable with his foot.

The evidence shows that not only are cable guides still not standard equipment on trawlers, but that at the time of plaintiff's injury, the guides were on the threshold of their use in the industry at all.

■ The court further finds that the sole proximate cause of plaintiff's injuries was his own act of negligence in kicking the cable. He admitted that his kicking the cable was a dangerous procedure. Other reasonable alternatives were available to plaintiff: he could have asked the other rigman to help him, or he could have let the cable back out and reeled it back in. The evidence

shows that time was not a critical factor and consequently, his kicking the cable was an unnecessary act of recklessness. The court finds, then, that plaintiff's negligence was the sole cause of his injuries.

Finally, plaintiff has not shown by a preponderance of credible evidence that the master of the vessel, the other rigman aboard the LITTLE BOY, or any other person for whose actions defendant was responsible at the time of plaintiff's accident negligently failed to take necessary action in time to prevent further injury to plaintiff.

By reason of the foregoing, defendant, LITTLE BOY, INC., is entitled to judgment in its favor on all issues of liability asserted.